Beth LYONS, Plaintiff–Appellant,

v.

The LEGAL AID SOCIETY,
Defendant–Appellee.

No. 1802, Docket 95–7030.

United States Court of Appeals,
Second Circuit.

Argued June 19, 1995.

Decided Oct. 30, 1995.

**1513**

district court and remand for further proceedings.

## I. BACKGROUND

Since September 1987, Lyons has been employed as an attorney in the Criminal Defense Division of Legal Aid in its office in lower Manhattan. Taking all of the factual allegations in the complaint as true, the pertinent events were as follows.

Debra L. Raskin, New York City (Anne L. Clark, Vladeck, Waldman, Elias & Engelhard, New York City, on the brief), for Plaintiff-Appellant.

Fredric C. Leffler, New York City (Stephanie L. Oratz, Proskauer Rose Goetz & Mendelsohn, New York City, on the brief), for Defendant-Appellee.

Before: KEARSE, ALTIMARI, and PARKER, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Beth Lyons, a staff attorney employed by defendant Legal Aid Society ("Legal Aid"), appeals from a judgment of the United States District Court for the Southern District of New York, Kevin Thomas Duffy, *Judge*, dismissing her complaint alleging that Legal Aid violated her rights under, *inter alia*, the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101–12213 (Supp. V 1993) ("ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–797b (1988 & Supp. V 1993) ("Rehabilitation Act") (collectively the "federal disability statutes"), principally by failing to provide her with a parking space near work. The district court, holding that the federal disability statutes imposed no such duty, dismissed Lyons's federal claims pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim on which relief can be granted. On appeal, Lyons contends that the complaint sufficiently stated claims on which relief can be granted under the federal statutes and that the reasonableness of the requested accommodation was a fact question that could not be decided without development of the record and pretrial discovery. For the reasons that follow, we agree, and we therefore vacate the judgment of the

### A. The History of Lyons's Disability

In January 1989, an automobile struck Lyons as she was leaving her parked car and dragged her some twenty feet, inflicting near-fatal injuries that included torn muscles, other hard- and soft-tissue wounds, and a dislocated left knee. From the date of the accident until June 1993, Lyons was on disability leave from Legal Aid; she underwent multiple reconstructive surgeries and received "constant" physical therapy. (Complaint ¶ 11.) Since the accident, Lyons has been able to walk only by "us[ing] walking devices, including walkers, canes and crutches." (*Id.*) Her physician has prescribed several exercise sessions each week in order for Lyons to maintain her ability to walk.

Lyons was able to return to work at Legal Aid in June 1993 and has since then performed her job duties successfully. She has continued, however, to suffer from various physical impairments. She wears a brace on her left knee; she cannot stand for extended periods, and she cannot climb or descend stairs without difficulty. Her condition "severely limits her ability to walk long distances either at one time or during the course of a day" (*id.* ¶ 14), and her general physical stamina is "significantly less than normal" (*id.* ¶ 15).

Before returning to work, Lyons asked Legal Aid to accommodate her disability by "pay[ing] for a parking space near her office and the courts in which she would practice." (*Id.* ¶ 17.) She stated that she would be unable to take public transportation from her home in New Jersey to the Legal Aid office in Manhattan because such "commuting would require her to walk distances, climb stairs, and on occasion to remain standing for

extended periods of time," thereby "over-tax[ing] her limited physical capabilities." (*Id.* ¶ 16.) Lyons's physician, an orthopedic and reconstructive plastic surgeon, advised Legal Aid by letter that such a parking space was "necessary to enable [Lyons] to return to work." (*Id.* ¶ 17.)

Legal Aid informed Lyons that it would not pay for a parking space for her. Accordingly, since returning to work, Lyons has spent $300–$520 a month, representing 15–26 percent of her monthly net salary, for a parking space adjacent to her office building.

Prior to returning to work, Lyons had also requested that Legal Aid accord her seniority increases for the entire 4½-year period of her disability leave. Under Legal Aid's internal policies, management had "discretion to adjust the seniority of employees who have not been actively employed for an extended period." (*Id.* ¶ 18.) Legal Aid agreed to increase Lyons's seniority level, but only by one year rather than by 4½. Accordingly, Lyons has received lower compensation than she would have received had she been accorded full seniority increases for the entire period of her disability leave.

### B. *The Proceedings in the District Court*

Lyons commenced the present action in April 1994. Citing an Equal Employment Opportunity Commission ("EEOC") guideline which stated that "reasonable accommodation of a disability 'could include . . . providing reserved parking spaces'" (Complaint ¶ 24 (quoting EEOC Interpretive Guidance on Title I of the ADA)), the complaint alleged that Legal Aid had refused to provide reasonable accommodations for Lyons's disability, thereby violating her rights under the ADA, the Rehabilitation Act, state law, and municipal law.

Legal Aid moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), contending that the accommodations requested by Lyons were unreasonable as a matter of law. The district court granted the motion in a handwritten endorsement that stated as follows:

> Whatever claims the plaintiff may have to an employer paid parking space are not cognizable under Federal law and those claims are dismissed. Lacking pendant

[*sic* ] jurisdiction mandates dismissal of the State law claims.

Accordingly this motion is granted.

Judgment was entered dismissing the complaint in its entirety. This appeal followed.

## II. DISCUSSION

On appeal, Lyons contends principally that the complaint alleged facts sufficient to state claims on which relief can be granted under the Rehabilitation Act and the ADA. Given the principle that the court should not grant a motion to dismiss for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), we agree.

### A. *The Contours of the Federal Disability Statutes*

The ADA prohibits an employer from discriminating against an employee "because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). As defined by the ADA, "discrimination" includes, *inter alia,*

> not making *reasonable accommodations* to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless . . . [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the . . . [employer's] business.

*Id.* § 12112(b)(5)(A) (emphasis added). "[O]therwise qualified" means that the individual, "*with or without reasonable accommodation,* can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8) (emphasis added).

The Rehabilitation Act, which prohibits disability-based discrimination by government agencies and other recipients of federal

funds, is similar. Section 504(a) of the Rehabilitation Act provides:

No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C. § 794(a) (Supp. V 1993). Regulations promulgated under this statute by the Department of Health and Human Services define a "qualified" person with a disability as one "who, *with reasonable accommodation,* can perform the essential function of the job in question," 45 C.F.R. § 84.3(k)(1) (1994) (emphasis added), and require recipients of federal funds to "make *reasonable accommodation* to the known physical or mental limitations of an otherwise qualified handicapped ... employee unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program," *id.* § 84.12(a) (emphasis added).

▪ Thus, under either the ADA or the Rehabilitation Act, a plaintiff can state a claim for discrimination based upon her employer's failure to accommodate her handicap by alleging facts showing (1) that the employer is subject to the statute under which the claim is brought, (2) that she is an individual with a disability within the meaning of the statute in question, (3) that, with or without reasonable accommodation, she could perform the essential functions of the job, and (4) that the employer had notice of the plaintiff's disability and failed to provide such accommodation. There is no question here with respect to the first, second, and fourth elements. The only question is whether Lyons's request that Legal Aid provide her with a parking space near work is, as a matter of law, not a request for a "reasonable" accommodation.

B. *The Meaning of "Reasonable Accommodation"*

Neither the ADA nor the Rehabilitation Act provides a closed-end definition of "reasonable accommodation." The ADA sets out a nonexclusive list of different methods of accommodation encompassed by that term, stating that

[t]he term "reasonable accommodation" *may include—*

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9) (emphasis added). The Rehabilitation Act does not include a definition of reasonable accommodation, but the regulations promulgated under that Act use virtually the same language as § 12111(9) of the ADA. *See* 45 C.F.R. § 84.12. The term is to be interpreted in the same way with respect to both the ADA and the Rehabilitation Act. *See, e.g., Staron v. McDonald's Corp.,* 51 F.3d 353, 355–56 (2d Cir.1995) (applying Rehabilitation Act analysis to ADA claim); 42 U.S.C. § 12117(b) (requiring agencies administering federal disability statutes to avoid applying "inconsistent or conflicting standards" to employment discrimination claims); H.R.Rep. No. 485, 101st Cong., 2d Sess., pt. 2, at 23 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 304 ("The ADA incorporates many of the standards of discrimination set out in regulations implementing section 504 of the Rehabilitation Act of 1973, including the obligation to provide reasonable accommodations....").

Additional regulations promulgated by the EEOC under the ADA give further guidance as to what may or may not be within the employer's obligation to provide "reasonable accommodation." The employer is required to provide

[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that

position; or.... that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.

29 C.F.R. § 1630.2(*o*)(1)(ii) and (iii) (1995). This description too is nonexclusive. The EEOC notes that "[t]here are any number of other specific accommodations that may be appropriate for particular situations but are not specifically mentioned" in § 1630.2(*o*). EEOC's Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. pt. 1630, app. at 407 (1995) ("EEOC Interpretive Guidance"). On the other hand, the accommodation obligation does not require the employer to make accommodations that are "primarily for the [individual's] personal benefit," such as an "adjustment or modification [that] assists the individual throughout his or her daily activities, on and off the job," or to provide "any amenity or convenience that is not job-related." *Id.* at 412.

In support of the order of dismissal in the present case, Legal Aid argues that Lyons's claim for financial assistance in parking her car amounts to a demand for unwarranted preferential treatment because the requested accommodation is merely "a matter of personal convenience that she uses regularly in daily life." (Defendant's Brief on Appeal, at 13.) Legal Aid asserts that it does not provide parking facilities or any other commuting assistance to its nondisabled employees and that Lyons's special needs in getting to work must therefore lie outside the scope of its obligations under the federal disability statutes. We find Legal Aid's contentions to be an inappropriate foundation for the Rule 12(b)(6) dismissal.

First, Legal Aid's assertion that it does not provide parking assistance to any other employee goes beyond the face of the complaint. This assertion cannot be the basis for a dismissal for failure to state a claim.

Further, even if that assertion were established as a matter of fact, it would not dispose of the issue of whether provision of a parking space would be a reasonable accommodation. It is clear that an essential aspect of many jobs is the ability to appear at work regularly and on time, *see, e.g., Carr v. Reno,* 23 F.3d 525, 530 (D.C.Cir.1994) ("an essential function of any government job is an ability to appear for work"), and that Congress envisioned that employer assistance with transportation to get the employee to and from the job might be covered. Thus, the report of the House of Representatives Committee on Education and Labor noted that a qualified person with a disability seeking employment at a store that is "located in an inaccessible mall" would be entitled to reasonable accommodation in helping him "get to the job site." H.R.Rep. No. 485, 101st Cong., 2d Sess., pt. 2, at 61 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 343. Similarly, the EEOC has stated that possible required accommodations other than those specifically listed in the statute include "making employer provided transportation accessible, and *providing reserved parking spaces.*" EEOC Interpretive Guidance at 407 (emphasis added). So far as we are aware, there has been no judicial interpretation of this EEOC guideline, which may have been intended to mean that the provision of parking spaces can be required, or that the reservation of employer-provided parking spaces can be required, or both.

■ Whatever the guideline intended, we think that the question of whether it is reasonable to require an employer to provide parking spaces may well be susceptible to differing answers depending on, *e.g.,* the employer's geographic location and financial resources, and that the determination of the reasonableness of such a requirement will normally require some development of a factual record. *See generally Borkowski v. Valley Central School District,* 63 F.3d 131, 138–40 (2d Cir.1995) (vacating summary judgment) (determination as to whether a particular accommodation is "reasonable" within the meaning of the Rehabilitation Act generally requires a flexible, fact-specific inquiry to be conducted on an individualized, case-by-case basis); *Staron v. McDonald's Corp.,* 51 F.3d at 356 (reversing Rule 12(b)(6) dismissal) (inquiry required into the "nature of the disability in question and the cost to the organization that would implement" the accommodation). Further, we have noted that

while reasonableness depends upon "a common-sense balancing of the costs and benefits" to both the employer and the employee, *Borkowski v. Valley Central School District,* 63 F.3d at 140, an accommodation may not be considered unreasonable merely because it requires the employer "to assume more than a *de minimis* cost," *id.* at 138 n. 3, or because it will cost the employer more overall to obtain the same level of performance from the disabled employee, *see id.*

Finally, we reject Legal Aid's contention that Lyons's request for a parking space amounts to no more than a demand for an additional fringe benefit in the nature of a "personal amenity" unrelated to the "essential functions" of her job. According to the complaint, whose factual allegations must be taken as true, Lyons cannot fulfill her responsibilities as a staff attorney at Legal Aid without being able to park her car adjacent to her office. Lyons's ability to reach her office and the courts is an essential prerequisite to her work in that position. There is no suggestion in the complaint that the requested parking space near the Legal Aid office and the courts was sought for any purpose other than to allow Lyons to reach and perform her job.

■ Plainly there is nothing inherently unreasonable, given the stated views of Congress and the agencies responsible for overseeing the federal disability statutes, in requiring an employer to furnish an otherwise qualified disabled employee with assistance related to her ability to get to work. We conclude that Lyons's complaint stated a claim on which relief can be granted under the ADA and the Rehabilitation Act. We express no view as to whether Legal Aid may be able to develop an evidentiary record prior to trial that is sufficient to demonstrate the unreasonableness of the requested accommodation as a matter of law. At this juncture, we note only that, in light of the need to develop a factual record, it was inappropriate to dismiss the complaint summarily by granting defendant's motion pursuant to Rule 12(b)(6).

## C. State–Law Claims

Lyons's complaint also asserted state-law claims that were dismissed by the district court, following its rejection of her federal claims, for lack of supplemental jurisdiction. Lyons contends that a reversal of the dismissal of federal claims requires the reinstatement of state-law claims that have been dismissed for lack of supplemental jurisdiction. We agree. We note also, though Lyons did not make this argument on appeal, that the complaint premised federal jurisdiction not only on the presence of federal questions but also on diversity of citizenship. Accordingly, since the complaint alleged that the parties were citizens of different states, and it sought injunctive relief that could easily exceed the value of $50,000, *see* 28 U.S.C. § 1332(a); *A.F.A. Tours, Inc. v. Whitchurch,* 937 F.2d 82, 88 (2d Cir.1991); 14A *Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d* § 3708, at 143–44, the district court apparently had original jurisdiction over the state-law claims and should not have dismissed them for lack of supplemental jurisdiction. In any event, the state-law claims too are reinstated.

## CONCLUSION

We have considered all of Legal Aid's arguments in support of the Rule 12(b)(6) dismissal of the complaint, including its claim that Lyons's only proper claim is against public transportation agencies, and we have found them to be without merit. The judgment of the district court is vacated, and the matter is remanded for further proceedings not inconsistent with this opinion.

Costs to plaintiff.