**Elizabeth BELLOM, Plaintiff,**

v.

**NEIMAN MARCUS GROUP, INC., Defendant.**

**No. 96 CV 512(BDP).**

United States District Court, S.D. New York.

Aug. 26, 1997.

---

Kim Berg, Lovett & Gould, White Plains, NY, for Plaintiff.

Michael R. Flaherty, Jackson, Lewis, Schnitzler & Krupman, White Plains, NY, for Defendant.

## MEMORANDUM DECISION and ORDER

PARKER, District Judge.

Plaintiff brings this action alleging gender, national origin and retaliatory discrimination on the part of her former employer in violation of Title VII, 42 U.S.C. § 2000–e *et seq.*, and parallel provisions the New York State Human Rights Law. Additionally, plaintiff asserts a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*

Currently before this Court is defendant's motion for summary judgment, pursuant to Fed.R.Civ.P. 56. For the reasons stated below, defendant's motion is granted in part and denied in part.

## BACKGROUND

Elizabeth Bellom began working, as a make-up artist for the Yves Saint Laurent line, in the cosmetics department of the Neiman Marcus store in White Plains, New York in October 1994. Bellom asserts that almost immediately she became the object of unwelcome sexually suggestive comments and behavior on the part of her supervisor, Diane Livingston. In February 1995, Neiman Marcus conducted an investigation of Living-

ston's alleged sexual harassment of employees, and later that month Livingston was dismissed from Neiman Marcus.[1] Bellom contends that Neiman Marcus was aware of Livingston's improper behavior long before February 1995, but failed to take any action until that time.

In February 1995, Livingston was replaced by Jane Hannigan who, Bellom asserts, discriminated against her on the basis of her national origin. According to Bellom, who emigrated to the United States from Bulgaria in 1989, Hannigan mocked her and other employees with foreign accents and favored "tall, blond, fair skinned, blue eyed" employees. Bellom further asserts that Hannigan retaliated against her for having participated in Neiman Marcus's investigation of Livingston.

Also occurring during Bellom's employ at Neiman Marcus was a significant construction project, conducted between January 1994 and March 1995. Bellom, who had been suffering from asthma since mid–1994, states that she experienced significant health problems due to the construction project. Bellom concedes that she was told that she could, during the pendency of the construction, work in another part of the store or go home if she was not feeling well. Indeed, Bellom left early once or twice, and she admits that Livingston never denied her permission to leave early. In addition, Livingston and Angela Cory, the Yves Saint Laurent account executive, told Bellom not to worry about meeting her monthly sales goal during the construction period and, in fact, Bellom missed her sales goal five times during the construction period. Bellom was also given a mask to wear during the construction period, but she states that it was ineffective in reducing the symptoms that she claims resulted from construction dust. On August 15, 1995, Bellom had an asthma attack while working at Neiman Marcus.

In May, June and July 1995, after the construction project was completed, Bellom failed to meet her monthly sales goal. In August 1995, Bellom was put on probation for missing her sales goal for three consecutive months. Bellom concedes that she was aware of Neiman Marcus's policy that failure to meet sales goal for three consecutive months would result in probation. Bellom states that the "prevailing reason" she did not meet her sales goal was that she was consistently out of stock because Hannigan failed to order products.

On September 21, 1995, Hannigan issued Bellom a final warning relating to her "unprofessional behavior." The text of that warning reads, in relevant part:

There has been excessive discussion of personal matters with co-workers during working hours.

. . .

[Your] behavior is a violation of NM's standards of conduct. Your refusal to stay at your counter despite the request of your supervior [sic] is one violation. Your discourtesy towards your co-workers by talking about personal matters is another violation. Your discourtesy towards a customer by involving her in your personal issues is another violation.

On October 5, 1995, Bellom filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") and later that month, on October 24, 1995, she resigned. Bellom was replaced by Kaya Dynska Yanitelli, who is of Polish national origin, as the make-up artist for Yves Saint Laurent.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment must be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see H.L. Hayden Co. v. Siemens Medical Sys., Inc.,* 879 F.2d 1005, 1011 (2d Cir. 1989). It is the burden of the moving party to demonstrate initially the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct.

---

1. Bellom contends that Livingston was not discharged from Neiman Marcus, but, in fact, left of her own accord. This contention, however, is not supported by competent evidence, *see* Fed. R.Civ.P. 56(e), and is therefore not properly before this Court.

2548, 2552–54, 91 L.Ed.2d 265 (1986); *see also Gallo v. Prudential Residential Servs. Ltd.*, 22 F.3d 1219, 1223 (2d Cir.1994). The burden then shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). Affidavits in support or opposition of a summary judgment motion must be made on personal knowledge, setting forth facts which would be admissible at trial by an affiant who is competent to testify to the matters within the affidavit. Fed.R.Civ.P. 56(e). A showing that there is a genuine issue of fact for trial requires a showing sufficient to establish the existence of every element essential to the party's case, and on every element for which the party will bear the burden of proof at trial. In deciding whether there is a genuine issue for trial, "the court is required to draw all factual inferences in favor of the party against whom summary judgment is sought." *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989). Where the nonmovant's evidence is merely conclusory, speculative or not significantly probative, summary judgment should be granted. *See Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12–15 (2d Cir.1986).

## DISCUSSION

### A. TITLE VII CLAIMS

#### 1. *Gender-Based Discrimination*

■ Bellom asserts claims of gender-based sexual harassment based on the "unwelcome sexual attention" she received from her former supervisor, Livingston.[2] Neiman Marcus concedes that Livingston engaged in inappropriate sexual behavior, but asserts that its response to this behavior was sufficiently prompt and adequate so as to immunize it from liability. *See Torres v. Pisano*, 116 F.3d 625, 633–34 (2d Cir.1997).

Where, as here, a hostile work environment is created by a low-level supervisor,[3] the employer will not be liable unless it either provided no reasonable avenue for complaint or knew or should have known of the harassment, but failed to act to stop it. *See Torres*, 116 F.3d at 633. Here, plaintiff contends that Neiman Marcus knew or shown have known of Livingston's behavior long before February 1995, but failed to act until then to stop it. Neiman Marcus takes the position that it first became aware of Livingston's behavior in February 1995 and it responded almost immediately by conducting an investigation and, based on the findings of that investigation, fired Livingston.

In support of her position, Bellom offers, *inter alia*, the affidavit of Maria Molinski, who worked in the Neiman Marcus cosmetics department from August 1993 until September 1995. Molinski states:

I complained to Dana Leggio, the Human Resources Coordinator at Neiman Marcus, about the inappropriate behavior and rumors of sexual misconduct engaged in by Livingston.

[ ] In response to my complaint, Leggio stated that she was previously made aware of similar complaints by both Jane Hannigan and Debbie Cuttorone. Leggio also stated that others had complained about

---

**2.** While the issue has not been raised by the parties, I note that the question of whether same-gender sexual harassment is cognizable under Title VII has generated considerable debate. Certain Circuits have rejected claims of same-gender sexual harassment altogether, *see, e.g., Fleenor v. Hewitt Soap Co.*, 81 F.3d 48 (6th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 170, 136 L.Ed.2d 112 (1996); other Circuits recognize same-gender claims, but limit them to cases in which the alleged harasser is homosexual, *see, e.g., Wrightson v. Pizza Hut*, 99 F.3d 138 (4th Cir.1996); and certain Circuits recognize same-gender claims without considering the sexual orientation of the alleged harasser. *See, e.g., Quick v. Donaldson Co.*, 90 F.3d 1372 (8th Cir. 1996). Our Court of Appeals has yet to take a position on this issue. The Supreme Court, however, recently granted certiorari to a petition raising the issue of same-gender sexual harass-

ment under Title VII. *See Oncale v. Sundowner Offshore Servs., Inc.*, 83 F.3d 118, *reh'g denied*, 95 F.3d 56 (5th Cir.1996), *cert. granted*, —— U.S. ——, 117 S.Ct. 2430, 138 L.Ed.2d 192 (1997). Accordingly, until directed otherwise, I find that sexual harassment perpetrated by a person of the same gender as the victim is cognizable under Title VII. *See, e.g., Sardinia v. Dellwood Foods, Inc.*, No. 94–5458, 1995 WL 640502 (S.D.N.Y. Nov. 1, 1995); *cf. Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 148 (2d Cir.1993) (Van Graafeiland, J., concurring).

**3.** I reject plaintiff's contention that Livingston was a "high level supervisor" at Neiman Marcus. As a manager in the cosmetics department, Livingston was at the lowest level in Neiman Marcus's supervisory structure.

Livingston for quite some time and Leggio did no [sic] know why her behavior was allowed to continue.

The "Problem–Solving Procedure" section of Neiman Marcus's employee handbook states a general goal of solving problems "at the lowest level possible," and, specifically, instructs that

[t]he following procedure is to be followed by any associate who wishes to bring an issue to the attention of management.

Step One

The associate shall take the matter up with his or her immediate supervisor in an attempt to agree on a satisfactory settlement.

Step Two

In the event a satisfactory settlement is not reached in Step One or if for some reason the associate does not wish to discuss the problem with the immediate supervisor, the employee may submit the concern to the Human Resource Manager in the facility. The manager will review and investigate the matter and attempt to find a mutually agreeable solution to the problem.

When an employee relies upon a reasonable impression created by his or her employer that a certain official is under a duty to respond to a harassment complaint, that official's knowledge of harassment may be imputed to the employer. *Torres,* 116 F.3d at 638. I find that Molinski could have interpreted Neiman Marcus's "Problem–Solving Procedure" to mean that Leggio could handle a harassment complaint, especially where, as here, the alleged harasser was Molinski's supervisor.

In her affidavit, Molinski states that when she complained to Leggio about Livingston, Leggio informed Molinski that she had been aware of Livingston's misconduct for "quite some time." As Molinski's complaint could have been lodged no later than February 1995, I find that her testimony creates an issue of material fact with respect to when Neiman Marcus became aware of Livingston's behavior and, therefore, whether Neiman Marcus responded in an appropriately timely manner. *See id.* Accordingly, as a consequence of this unresolved factual issue, defendant's motion for summary judgment on plaintiff's gender-based discrimination claim is denied.

### 2. *National Origin* [4]

■ Plaintiff alleges that she was "singled out for adverse disciplinary treatment" by Hannigan because of discrimination on the

---

4. Plaintiff's papers are somewhat inconsistent on the question of whether plaintiff's case is properly analyzed under a mixed motive or pretext rubric. *Compare McDonnell Douglas Corp. v. Green* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) *with Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Plaintiff purports to assert a mixed motive case, yet, in her Memorandum of Law in Opposition to Defendants' [sic] Motion for Summary Judgment, she relies, to a great extent, on precedent provided by pretext cases.

When asserting a mixed motive claim, "a plaintiff must initially proffer evidence that an impermissible criterion was in fact a 'motivating' or 'substantial' factor in the employment decision.... This burden is greater than the level of proof necessary to make out a *McDonnell Douglas* prima face case." *de la Cruz v. New York City Human Resources Admin.,* 82 F.3d 16, 23 (2d Cir.1996) (citations omitted); *see also Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1040 (2d Cir.1993); *Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1181–82 (2d Cir.1992). If plaintiff's initial showing is made, the defendant then has the opportunity to "demonstrate that it would have reached the same decision even in the absence of the impermissible factor." *de la Cruz,* 82

F.3d at 23. In order to ultimately succeed on a mixed motive claim a plaintiff must adduce evidence in the form of "conduct or statements by persons involved in the decision making process that may be viewed as directly reflecting the alleged discriminatory attitude." *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 913 (2d Cir. 1997) (citation and quotation marks omitted).

Pretext cases are properly analyzed according to the burden-shifting scheme established in *McDonnell Douglas.* Under *McDonnell Douglas,* once a plaintiff has established a *prima facie* case of discrimination, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its actions. If the defendant is able to articulate such a reason, the plaintiff then must show that the reason proffered by the defendant, is, in fact, a pretext for discrimination. *See Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 129 (2d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1308 (2d Cir.1995).

I find, for the reasons discussed in the body of this decision, that plaintiff's national origin and retaliation claims fail under either a pretext or mixed motive analysis.

basis of national origin, as well as being subjected to a hostile work environment permeated by "racist and derogatory comments with respect to individuals, such as Plaintiff, who are not blond, blue eyed and fair skinned or otherwise Aryan in appearance." Yet, even if plaintiff's allegations were sufficient to establish a claim of national origin discrimination, these allegations are simply not supported by the competent evidence offered in opposition to summary judgment. In support of her contention that Hannigan made derogatory comments about employees who are not "blond, blue eyed and fair skinned," plaintiff refers this Court to deposition testimony from Maria Molinski, Danielle Irizarry, Eleanor Spindel and Carlos Paz Videla. Yet, construing the testimony of these individuals in the light, most favorable to Bellom, see American Fed'n of Grain Millers v. International Multifoods Corp., 116 F.3d 976, 978 (2d Cir.1997), I do not find it to support Bellom's claim of national origin discrimination.[5] Further, I do not find Hannigan's alleged mimicking of Bellom's accent on one or two occasions sufficient to establish a claim of discrimination on the basis of national origin. Our Court of Appeals has consistently held that "stray remarks uttered in the workplace ... are insufficient to create a material issue of fact to defeat a summary judgment motion." Spence v. Maryland Cas. Co., 995 F.2d 1147, 1155 (2d Cir. 1993) (citation omitted).

■ With respect to Bellom's claim that she suffered adverse employment action due to her national origin, I find that Neiman Marcus has adduced sufficient evidence that the employment actions in question were taken for nondiscriminatory reasons and, assuming arguendo that any discriminatory factors were at play, that it would have taken the same actions absent such factors. See Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2d Cir.1995); Cosgrove v. Sears Roebuck & Co., 9 F.3d 1033, 1040 (2d Cir.1993).

Neiman Marcus claims that Bellom was placed on probation for failure to meet her sales quota for three consecutive months. Neiman Marcus also relies on the undisputed fact that other employees were routinely placed on probation as a consequence of violating the quota policy and that plaintiff was replaced by an employee who is also of Eastern European ancestry and who speaks with an accent. Plaintiff disputes neither that she failed to meet her sales quota in May, June and July 1995 nor that she was aware of Neiman Marcus's policy to respond to such a failure with probation, but asserts that she failed to meet her sales quota because Hannigan refused to order the products she needed. However, this allegation is not made on personal knowledge and is therefore insufficient to create a material issue of fact. See Fed.R.Civ.P. 56(e). Similarly, plaintiff has failed to offer admissible evidence which would defeat, for purposes of summary judgment, defendant's contention that Bellom was issued the final warning letter solely because of the legitimate reasons enumerated in the letter itself. See de la Cruz, 82 F.3d at 23; Holt, 95 F.3d at 129. Accordingly, Neiman Marcus's motion for summary judgment on plaintiff's claim of discrimination on the basis of national origin is granted.

### 3. Retaliation

Under Title VII, a prima facie case of retaliatory discrimination is established by a showing of: "i) participation in a protected activity known to the defendant; ii) an employment action disadvantaging the plaintiff; and iii) a causal connection between the protected activity and the adverse employment

---

5. For example, plaintiff refers this Court to the following portion of Irizarry's deposition testimony:

Q. You testified earlier that Jane Hannigan had favorites. Can you identify any of those favorites?
A. No.
Q. How did you determine that certain people were Jane's favorites?
A. I think she cut certain people more slack. If certain people were late, they didn't really get in trouble.

Q. Do you have any specific references to some she cut slack to?
A. The girl with the long blond hair. Again, I don't know the names but long blond hair and one who had like highlighted blond hair. And people like that where I see people getting reprimanded or a little remark, but sometimes this person with the blond hair and the other people showing up at any time and one got in trouble and one didn't.

action." *Tomka,* 66 F.3d at 1308; *see also Torres,* 116 F.3d at 639; *Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 130 (2d Cir.1996).

For the reasons discussed with respect to plaintiff's claim of discrimination on the basis of national origin, *see infra* at 531–33, I find that plaintiff has failed to meet her burden of establishing that defendant, for improper reasons, engaged in employment actions which disadvantaged her. Accordingly, defendant's motion for summary judgment on plaintiff's claim of retaliatory discrimination is granted.

## B. AMERICANS WITH DISABILITIES ACT

In order to establish a *prima facie* ADA claim, a plaintiff must establish:

(1) that the employer is subject to the [ADA], (2) that she is an individual with a disability within the meaning of the [ADA], (3) that, with or without reasonable accommodation, she could perform the essential functions of the job, and (4) that the employer had notice of the plaintiff's disability and failed to provide such accommodation.

*Lyons v. Legal Aid Soc'y,* 68 F.3d 1512, 1515 (2d Cir.1995); *see also Stone v. City of Mount Vernon,* 118 F.3d 92, 96–97 (2d Cir. 1997)

 Defendant rejects the notion that Bellom is "an individual with a disability" under the ADA. *See Lyons,* 68 F.3d at 1515. Asthma, the disability alleged by Bellom, is a "physical impairment" under the ADA. *See Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 722 (2d Cir.1994) (decided under Rehabilitation Act, but analysis extended to ADA). However, in order to be considered "an individual with a disability," a plaintiff's impairment must "substantially limit[ ] one or more of [his or her] major life activities." *Id.* Our Court of Appeals has explained that "[a]n impairment that disqualifies a person from only a *narrow range of jobs is not considered* a substantially limiting one." *Id.* at 723. Because plaintiff has failed to adduce evidence addressing the issue of how her asthma affected activities beyond that of working in the cosmetics department at Neiman Marcus, she had not adduced competent evidence to create a triable issue on whether she is, in fact, "disabled" within the meaning of the ADA.

Assuming *arguendo* that plaintiff is disabled, for purposes of the ADA, defendant asserts that it reasonably accommodated her disability. Plaintiff, on the other hand, contends that because defendant "provided no protection from the dust, noxious fumes, and other unknown construction pollutants," it did not reasonably accommodate her during the construction period. Additionally, Bellom asserts that "Hannigan [ ] provoked an asthma attack and then management and security failed to offer her any assistance in a situation which could have been life threatening."

With respect to the issue of reasonable accommodation, I note that *during the construction period* defendant provided Bellom with a dust mask; allowed her to work in a different part of the store; allowed her to go home early; and relieved her from her obligations under the sales quota. In fact, the only accommodation purportedly requested by Bellom which Neiman Marcus did not provide is a mask with a respirator or oxygen tank attached to it, rather than a standard mask. Yet, the only notice defendant had that the standard mask was inadequate was in a January 30, 1995 letter from Dr. Harlan R. Weinberg, which reads as follows:

To Whom It May Concern:

Please be advised that ongoing construction at Neiman Marcus with exposure to construction dust and chemical fumes has worsened Ms. Bellom's asthma. The face mask is not efficient to prevent an exacerbation of her asthma. Ms. Bellom may need to leave work as needed due to her asthma.

I find, however, that while the letter from Dr. Weinberg addresses the inadequacy of a standard mask, it does not give Neiman Marcus notice that Bellom needed a respirator or oxygen tank. Rather, the letter puts Neiman Marcus on notice that Bellom might need to leave work, which she did on at least one occasion. Similarly, I find Bellom's contention that "management and security failed to offer her any assistance" when she had an

**534**

asthma attack unsupported by the record. Bellom concedes that she was offered, but declined, an ambulance and fails to state what, if anything, further Neiman Marcus could have provided her at that time. Lastly, I reject Bellom's allegation that Hannigan "provoked" Bellom's asthma attack, because speculative and conclusory allegations such as this one are insufficient to defeat a motion for summary judgment. *See Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1456 (2d Cir.1995); *Knight,* 804 F.2d at 12–15. Accordingly, defendant's motion for summary judgment on plaintiff's ADA claim is granted.[6]

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment, pursuant to Fed.R.Civ.P. 56, is granted in part and denied in part. The parties are directed to file pre-trial papers with the Court by September 12, 1997 and appear for a final pre-trial conference on September 15, 1997 at 9:30 a.m.

SO ORDERED.

---

**6.** Defendant construes plaintiff's statement that she was "left with no reasonable alternative but to leave the employ of Neiman Marcus" as assertion of a constructive discharge claim. While it is not entirely clear to me that plaintiff is asserting such a claim, in an excess of caution I will consider the merits of a constructive discharge claim.

An employee's resignation will be considered a "constructive discharge" when an employer "intentionally creates an intolerable work atmosphere that forces an employee to quit involuntary." *Chertkova v. Connecticut Gen. Life Ins. Co.,* 92 F.3d 81, 89 (2d Cir.1996); *see also Spence v. Maryland Cas. Co.,* 995 F.2d 1147, 1156 (2d Cir.1993); *Pena v. Brattleboro Retreat,* 702 F.2d 322, 325 (2d Cir.1983). In interpreting the "intolerable" component of the constructive discharge standard, our Court of Appeals has ex-

plained that "working conditions are intolerable when they are 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Chertkova,* 92 F.3d at 89 (quoting *Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1188 (2d Cir.1987)). Having dismissed plaintiff's national origin, retaliation and ADA claims, any constructive discharge claim could refer only to the period during which plaintiff alleges she experienced gender-based discrimination. As that period ended in February 1995, when Livingston was discharged from Neiman Marcus, and Bellom did not resign until October 1995, I conclude that the only activities which might rise to the level of "intolerable" had ended approximately eight months prior to plaintiff's resignation. Accordingly, a constructive discharge claim is not available to Bellom.