Suzanne **GUGLIETTA**, Plaintiff

v.

**MEREDITH CORPORATION**

No. 3:03–CV–1108 EBB.

United States District Court, D. Connecticut.

Jan. 26, 2004.

---

Gary Edward Phelan, Klebanoff & Phelan, PC, West Hartford, CT, for Plaintiff.

Felix J. Springer, Day, Berry & Howard–Htfd–CT, Hartford, CT, for Defendant.

### RULING ON MOTION TO DISMISS

BURNS, Senior District Judge.

### INTRODUCTION

Plaintiff Suzanne Guglietta ("Plaintiff"), has filed this action against her former employer, Meredith Corporation ("Defendant"). Plaintiff's First Amended Complaint (August 29, 2003) contains al-

legations of sex, pregnancy, and age discrimination in the workplace, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; and Sections 46a–60(a) and (a)(7) of the Connecticut Fair Employment Practices Act ("CFEPA"). In her Memorandum of Law in Opposition to the Defendant's Motion to Dismiss the First Amended Complaint (November 7, 2003), Plaintiff withdrew her pregnancy discrimination claim. Defendant's Motion and Memoranda of Law, based upon Fed.R.Civ.P. 12(b)(6), assert that Plaintiff's pleading has failed to state any remaining claims upon which relief can be granted.

## STATEMENT OF FACTS

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, this Motion. The facts are alleged by Plaintiff in the First Amended Complaint and in her Memorandum of Law in Opposition to the Motion to Dismiss.

Plaintiff was hired as a producer at WFSB–TV (a station owned by Defendant) on January 10, 1990. Initially, Plaintiff's work schedule consisted of 3:00 p.m. to 12:00 a.m. on weekends, plus 8:am to 5:30 p.m., three days a week. It was not unusual for Plaintiff's schedule to be altered in accordance with the needs of the station. For example, around September of 1996, her shift changed to 11:p.m. to 7:00 a.m., Monday through Friday. Her schedule changed again in 1998, to 4:00 a.m. to 1:00 p.m., Monday through Friday.

In October of 1999, Plaintiff took a leave of absence for maternity leave. While on leave, Plaintiff contacted the News Director, Deborah Johnson ("Johnson"), to request that she be assigned to a different shift in order to accommodate her childcare needs. Johnson initially denied such request but, after meeting with Plaintiff, she permitted her to return to a schedule consisting of 12:30 a.m. to 9:00a.m. on weekends and 9:00a.m. to 6:00 p.m., three days a week.

Plaintiff returned to work following her maternity leave in January, 2000. Her schedule remained the same until, more than two full years after such return, Defendant changed Plaintiff's schedule, placing her back on the earlier slot of 4:00 a.m. to 12:30 p.m. Johnson advised Plaintiff that the station was consolidating the weekday schedule into one shift from 9:00 a.m. to 6:00 p.m. Johnson explained to Plaintiff that a twenty-five year old female Associate Producer, Courtney Lewis, had been assigned to the day shift because she was "consistently a more creative, innovative producer than [Plaintiff]", and because WFSB wanted to go in a "different direction" with its broadcasts.

Plaintiff informed Johnson, "as she had several times before," that she could not work the 4:00 a.m. to 12:30 p.m. shift to which she was being reassigned, because her husband, a police officer, worked the night shift, and, therefore, no one would be home from 4:00 a.m. to 7:00 a.m. to care for their child.

Again, on March 12, 2002, Johnson met with Plaintiff to determine whether Plaintiff had changed her mind about the required shift change. Plaintiff, as usual, repeated that she could not work the hours required, as she had no child care. Johnson then handed a memo to Plaintiff, which memo stated that, because Plaintiff was unable to accept the assigned shift, she must resign. Inasmuch as Plaintiff refused to do so, she was terminated, effective March 25, 2002.

In the First Amended Complaint, Plaintiff alleges that: "men with children who are employed at the WSFB–TV are not subjected to adverse employment action because they have children; plaintiff was subjected to adverse employment action

because she has [sic] is a female with a child; and, the plaintiff's sex and age, as well as the fact that she had a child, were substantive factors which led the defendant to terminate her employment for pretexual reasons and select a less experienced individual more than twelve (12) years younger than the plaintiff for a position which she had sought." First Amended Complaint at ¶¶ 33, 34, 36.

## LEGAL ANALYSIS

### I. The Standard of Review

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The function of a motion to dismiss is "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984) *quoting Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir. 1980).

Pursuant to a Rule 12(b)(6) analysis, the Court takes all well-pleaded allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff. *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996). A complaint should not be dismissed unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Lyons v. Legal Aid Society,* 68 F.3d 1512, 1514 (2dCir.1995). *See also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)(Federal Rules reject approach that pleading is a game of skill in which one misstep by counsel may be decisive of case).

Plaintiff correctly cites the mandatory authority of *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) for the proposition that an employment discrimination complaint need not contain specific facts establishing a *prima facie* case under the framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Instead, the complaint must only contain a "short and plain statement of the claim showing that the pleader in entitled to relief", pursuant to the liberal pleading requirements of Fed.R.Civ.P. 8(a)(2). *Swierkiewicz,* 534 U.S. at 512, 122 S.Ct. 992. However, a complaint must still provide to a defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.citing Conley,* 355 U.S. at 47, 78 S.Ct. 99. In other words, if the facts as pleaded, after thorough analysis, still fail to support any viable cause of action based thereon, a motion to dismiss may be granted.

### II. The Standard As Applied

#### A. Age Discrimination Under CFEPA

■ In her Memorandum of Law in Opposition to Defendant's Motion to Dismiss, Plaintiff states: "[t]he defendant accurately noted in its Motion to Dismiss that '[p]resumably, plaintiff omitted any reference to the ADEA given its clear directive that it apply *only* to 'individuals who are *at least 40 years of age*', 29 U.S.C. § 631(a)(emphasis added by Defendant) and that the plaintiff was only 37 years of age at the time of her discharge.'" *Plaintiff's Memorandum* at p. 15. Plaintiff next asserts that, in contradistinction to the ADEA, "the CFEPA does not limit its coverage to individuals over a certain age" and, accordingly, at age 37, she has stated a claim for age discrimination under CFEPA.

It is true that CFEPA does not contain an age "floor" which the Court can use to

identify which individuals belong to the protected class. In deciding an issue of first impression in this jurisdiction, Honorable Christopher F. Droney held that, in predicting what age the "Connecticut Supreme Court would select, it appears that the Supreme Court would use the same age floor used in ADEA— 40." *Rogers v. First Union National Bank,* 259 F.Supp.2d 200, 209 (D.Conn.2003).

This Court agrees that:

Such an approach would be consistent with the Connecticut courts' decisions which look to the interpretation of federal discrimination statutes for guidance in interpreting Connecticut discrimination statutes. *See Levy [v. CHRO],* 35 Conn. App. [96], 107–108 (1994). Moreover, since the CFEPA is silent on this point, there is no obvious basis for choosing an age cut-off other than by reference to analogous federal law.

*Rogers,* 259 F.Supp.2d at 209.

It is a well-established canon of statutory construction that statutes should not be interpreted to reach an absurd result. *See Hasselt v. Lufthansa German Airlines,* 262 Conn. 416, 815 A.2d 94, 101 (2003). Any interpretation of an age discrimination statute which does not provide for a protected class to be covered by such statute would render it meaningless and unenforceable. Without such a limitation, a lawsuit could be filed every time an employee or applicant who happened to be younger than any other employee or applicant was selected. As the Second Circuit has pointed out, any time one candidate is chosen over another there are going to be differences between the candidates. *Fisher v. Vassar College,* 114 F.3d 1332, 1337 (2d Cir.1997)(*en banc*), *cert. denied,* 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). *See, e.g. Lopos v. Ruocco,* 99 F.Supp.2d 207, 208 (D.Conn.2000)(existence of age difference standing alone in-sufficient; otherwise every selection process could result in discrimination claim).

Resultingly, Plaintiff's age discrimination claim, brought pursuant to CFEPA, is hereby DISMISSED, as this Court holds that, at age 37, she is not within the age group protected by this statute. Hence, it is beyond doubt that the Plaintiff can prove no set of facts in support of her age discrimination claim which would entitle her to relief. *See Lyons,* 68 F.3d at 1514.

### B. *"Sex–Plus" Discrimination under Title VII*

Plaintiff has withdrawn her claim of discrimination based on pregnancy and now alleges, as summed up in her Memorandum of Law, that "she was subjected to adverse employment action because she is a female with a child while male employees at WFSB–TV with children were not subject to adverse employment actions." *Id.* at p. 9, *citing* First Amended Complaint at ¶¶ 33–34. She identifies this as "sex-plus" discrimination.

██ "Sex-plus" discrimination occurs when a person is subjected to disparate treatment based, not solely on gender, but on her gender "considered in conjunction with a second characteristic." *Fisher v. Vassar College,* 70 F.3d 1420, 1433 (2d Cir.1995). After reviewing an abundance of sex-plus cases, this Court has determined that it is only logical that this second characteristic also be protected by antidiscrimination statutes. *See, e.g.,United Automobile Workers v. Johnson Controls,* 499 U.S. 187, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991)(Title VII forbids sex-specific fetal-protection policies); *Newport News Shipbuilding & Dry Dock Co. v. EEOC,* 462 U.S. 669, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983)(Pregnancy Discrimination Act forbids discrimination based on sex and pregnancy). Although Plaintiff seemingly contends that her status is that

of a "woman with a child," her actual claim appears to be that of a "woman with child-care difficulties." *See* First Amended Complaint at ¶¶ 19, 20, 22, 23, 26. Her continued assertion, made repeatedly to her supervisors, was that she could not commence her work day at 4:00 a.m. because she had no babysitter or day care from that time until her husband arrived home from his work shift at 7:00 a.m. The Court finds itself in agreement with Defendant when it postulates that Plaintiff wanted an affirmative accommodation not only for herself, but for her husband. To quote her: "[i]t was difficult and unreasonable to subject Mrs. Guglietta to working conditions where she would work from 4:00 a.m. until 12:30 p.m. and have to find a babysitter or daycare center to watch her son from 3:30 a.m. until 7:00 a.m. or leave her two-year-old son home alone for 3.5 hours until her husband got home from work at 7:00 a.m." *Plaintiff's Memorandum* at p. 28.

Initially, the courts which have considered the issue have held that child care is a gender-neutral trait. "A disservice is done to both men and women to assume that child-rearing is a function particular to one sex." *Record v. Mill Neck Manor Lutheran School,* 611 F.Supp. 905, 907 (E.D.N.Y.1985); *Barnes v. Hewlett–Packard Co.,* 846 F.Supp. 442, 445 (D.Md.1994)(caring for medical needs of child gender-neutral and "could have been administered as well by her husband as by herself"); *Piscottano v. Metropolitan Life Ins. Co.,* 118 F.Supp.2d 200, 212 n. 5 (D.Conn.2000)(gender based assumptions made about child care duties a mother must "necessarily" engage in are questionable).

This Court is in accord with the mandatory and persuasive rationale of these cases and holds that child-rearing is not a sex-plus characteristic protected by Title VII, the Pregnancy Disability Act, or any other federal or state antidiscrimination statute. Her claim to the contrary is not a claim upon which relief may be granted.

▮ Plaintiff has added a sentence to her First Amended Complaint to allege that "[m]en with children who are employed by WFSB–TV are not subjected to adverse employment action because they have children." First Amended Complaint at ¶ 33. The adverse employment actions to which Plaintiff was subjected are alleged as "(1) being told to work a shift from 4:00 a.m. to 12:30 p.m. that the defendant knew that she would not be able to work; (2) not being selected for an available daytime (9:00 a.m. to 6:00 p.m.) Producer shift which was considered to be one of the premiere shifts and which the plaintiff had sought; (3) providing her with a performance evaluation containing false allegations of performance deficiencies; and (4) terminating her for pretextual reasons."

In this Circuit, to constitute an adverse employment action in violation of Title VII, a change in working conditions must be "materially adverse." *Galabya v. New York City Board of Educ.,* 202 F.3d 636, 640 (2d Cir.2000). A materially adverse change "must be more disruptive than a mere inconvenience or an alteration of job responsibilities" and "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices … unique to a particular situation." *Id.* (internal quotations and citations omitted). *See also Wanamaker, v. Columbian Rope Co.,* 108 F.3d 462, 466 (2d Cir.1997)(same); *Flaherty v. Gas Research Institute,* 31 F.3d 451, 456 (7th Cir.1994)(a "bruised ego" is not enough).

Indeed, a survey of the relevant case law shows that the authority requiring a

clear showing of adversity in employee transfer decisions is both wide and deep. *Fairbrother v. State of Connecticut, Department of Mental Health and Addiction Services,* 3:01–CV–162 (EBB), *Ruling on Motion for Judgment as a Matter of Law, or for a New Trial* (October, 2003)(transfer offering same position in terms of pay, benefits, credit toward retirement, and job duties not adverse employment action)(collecting cases). *See also Banks v. East Baton Rouge Parish School Board,* 320 F.3d 570, 576–77 (5th Cir.2003)(employer's act of giving employee right of first refusal not adverse employment action); *Forkkio v. Powell,* 306 F.3d 1127, 1130–31 (D.C.Cir.2002)(no adverse employment action when transfer caused only alleged "loss of prestige"); *Marrero v. Goya of Puerto Rico., Inc.,* 304 F.3d 7, 25 (1st Cir.2002)(not enough that plaintiff felt stigmatized and punished by transfer; more tangible change in duties or working conditions necessary); *Hunt v. Rapides Healthcare Sys.,* 277 F.3d 757, 769 (5th Cir.2001)(action that "does not affect job duties, compensation, or benefits" not adverse employment action); *Dilenno v. Goodwill Indus.,* 162 F.3d 235, 236 (3rd Cir.1998)(mere idiosyncracies of personal preference not sufficient as adverse employment action); *Horn v. County of San Diego,* 124 F.3d 211, 212 (9th Cir.1997)(plaintiff's transfer amounted to subjective loss of job satisfaction rather than adverse employee action); *Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 886–7 (6th Cir.1996)(transfer with same rate of pay and benefits, with no

materially modified duties not adverse employment action).

Based on this plethora of authority, this Court holds that Plaintiff did not suffer an adverse employment action when Defendant required that she transfer to another shift, which transfer would have caused no diminution in salary or benefits; the job responsibilities would have remained the same; the proposed transfer was in no way a demotion; nor was the proposed position one that was materially less prestigious, due to the continuation of identical job responsibilities.[1] Plaintiff further claims that her "employment would also be adversely affected because the transfer would prevent her from producing the weekend morning broadcasts and weekday daytime broadcasts three days a week and force her to produce the less prestigious weekday early morning broadcasts." *Plaintiff's Memo* at p. 25. This assertion rings hollow. Plaintiff had willingly transferred to this shift at an earlier date, where she worked for a period in excess of a year, without any complaint that this shift was less prestigious. In summary, Plaintiff did not suffer an adverse employment action when she was transferred to the 4:00 a.m. to 12:30 p.m. shift.

■ Nor did Plaintiff suffer an adverse employment action when she was given a negative performance evaluation on March 11, 2002. "Title VII was designed to address **ultimate** employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Dollis v. Rubin,* 77 F.3d 777, 781–82 (5th

---

**1.** Plaintiff claims that the Second Circuit has held that a shift assignment that makes normal life difficult for the employee is an adverse employment action, *citing Gibson v. American Broadcasting Companies,* 892 F.2d 1128, 1134 (2d Cir.1889) as authority for this proposition. It is beyond cavil that *Gibson* never mentions the phrase "adverse employ-

ment action", nor does its analysis have any resemblance to such a claim. Rather, the *Gibson* Court reversed a grant of summary judgment in the defendant's favor and sent to trial the issue of whether the reason given for a differing work schedule between white and black newspeople was a pretext for racial discrimination.

Cir.1995)(emphasis added). Further, courts within the Second Circuit have "found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions." *Bennett v. Watson Wyatt & Co.,* 136 F.Supp.2d 236, 248 (S.D.N.Y.2001)(collecting cases).

■ Plaintiff next posits that Defendant's decision to assign the new consolidated shift to Lewis, "a younger and less experienced employee than plaintiff," is also an adverse employment action. It is not clear what the source of authority is for such a claim and Plaintiff cites none. However, it is telling that the other key figures in Plaintiff's allegations are female, like herself. Johnson, the News Director, was clearly the decision-maker with regard to Plaintiff's changed schedule and ultimate termination when Plaintiff refused to work the changed schedule. It was Johnson whom Plaintiff first contacted while she was out on maternity leave; it was Johnson who adjusted Plaintiff's schedule to accommodate her child care needs for at least two years following the child's birth; it was Johnson who negotiated with Plaintiff over subsequent changes to her schedule; and Johnson who gave the Plaintiff one last chance to accept her new shift prior to termination. As noted above, the employee chosen over the Plaintiff for the day-shift was also a female. These circumstances— where both the decision-maker and the employee chosen over Plaintiff are both female— are inapposite to a viable claim of gender discrimination. *See, e.g., Clark v. New York State Electric & Gas Corp.,* 67 F.Supp.2d 63, 73 (N.D.N.Y.1999)(fact that plaintiff's supervisor was female, as was her permanent replacement, undermines claim of gender discrimination).

Finally, Plaintiff declares that her termination from employment, following her refusal to work the shift to which she had been assigned, was a constructive discharge. However, "disagreements over unpleasant working conditions that are part and parcel of the job do not form the basis of a constructive discharge claim." *O'Neil–Marino v. Omni Hotels Mgt. Corp.,* 2001 WL 210360 at *6, 2001 U.S.Dist. LEXIS 2138 at *20 (S.D.N.Y. March 2, 2001)(increase in work hours from 40 to 75 hours a week which imposed considerable burden on plaintiff because of her family responsibilities was unactionable "garden-variety" disagreement with her employer over nature of duties).

## CONCLUSION

The above analysis makes it clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the First Amended Complaint. Accordingly, Defendant's Motion to Dismiss the First Amended Complaint [Doc. No. 13] is hereby GRANTED WITH PREJUDICE. Plaintiff's request to amend her Complaint for a second time is hereby DENIED, as such amendment would be futile within the meaning of Fed. R.Civ.P 15. A trial court does not abuse its discretion in denying leave to amend a complaint which, even as amended, would fail to state a cause of action. *S.S. Silberblatt, Inc. v. East Harlem Pilot Block— Bldg. 1 Housing Development Fund Co., Inc.,* 608 F.2d 28 (2d Cir.1979). Also, leave to amend need not be granted if the proposed amended complaint would be subject to dismissal. *See, e.g., Bellanger v. Health Plan of Nevada, Inc.* 814 F.Supp. 914 (D.Nev.1992). In the present case, Plaintiff requests that she be allowed to file a second amended complaint pleading sex-plus discrimination and the names of male employees with children who were not subjected to adverse employment action. Those issues, however, have already been decided herein, as Plaintiff and Defendant briefed said issues as set forth in

the First Amended Complaint and in Plaintiff's Memorandum of Law. As held, neither claim, as already considered by this Court, sets forth a claim upon which relief may be granted.

The Clerk is directed to close this case.

SO ORDERED