**Todd DeMAR, Plaintiff,**

v.

**CAR–FRESHNER CORPORATION, Defendant.**

**No. 97–CV–498.**

United States District Court, N.D. New York.

Jan. 14, 1999.

Todd R. DeMar, Watertown, NY, pro se.

Bond, Schoeneck & King, LLP, Syracuse, NY, for Defendant. Paul Sansoucy, Chris Jones, Of Counsel.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

Plaintiff Todd DeMar ("DeMar" or "Plaintiff") brought the instant action on April 10, 1997, pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, against his former employer, Car–Freshner Corporation ("Car-Freshner" or "Defendant"), alleging employment discrimination. Specifically, Plaintiff asserts Defendant failed to provide him with reasonable accommodations after being notified that he was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), and subsequently discharged him because of his condition. *See* Compl. at ¶¶ 15–20. Plaintiff seeks compensatory and punitive damages, and attorney's fees.

Presently before the Court is Defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56.

## I. Background

Plaintiff has failed to submit a statement in accordance with Local Rule 7.1(f) which requires "a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue."[1] Accordingly, all material facts set forth in the Rule 7.1(f) statements served by the moving parties are deemed admitted. *See* N.D.N.Y. LOCAL R. 7.1(f); *Costello v. Norton,* 1998 WL 743710, at *1 n. 2 (N.D.N.Y. October 21, 1998).

Plaintiff was hired by Car–Freshner as an Assistant Administrator in March 1995. Although Plaintiff initially inquired into the position of Personnel Director, he subsequently interviewed for a newly created position working directly for Defendant's President, Richard Flechtner ("Flechtner"). The position, which became formally titled Assistant Administrator, was designed to fill Defendant's severe need for increased management help and covered a wide range of duties that included, inter alia, reviewing trademark usage, organizing the filing of litigation matters and reviewing correspondence and materials related to pending litigation, reviewing purchase orders, organizing Defendant's trade show, performing a capacity study in connection with proposed expansion, and handling Defendant's warehouse lease. Significantly, Plaintiff was informed that the position was inherently unstructured and very demanding, and required him to work independently, with minimal opportunity for supervision or training. As such, the position did not lend itself to either a formal job description or defined set of tasks. Thus, Plaintiff functioned much like a "right-arm" to Flechtner, requiring him to do "whatever

---

1. The 7.1(f) Statement submitted by Plaintiff fails to set forth specific facts or citations to the record; rather, it makes a stream of conclusory and unsupported statements that "[a] genuine issue of material fact exists."

he was told to do at that time," and reported directly to Flechtner.

Prior to accepting the position of Assistant Administrator at Car–Freshner, Plaintiff obtained a college degree and completed his first year of law school. Additionally, Plaintiff operated his own cable television installation business and worked in a variety of positions at Car–Freshner.

In October 1995, apparently dissatisfied with Plaintiff's performance as Assistant Administrator, Flechtner reassigned Plaintiff to a "product development project" where he worked with other employees in a team-oriented setting. Although Defendant had made the decision to remove Plaintiff from his position as Assistant Administrator around September or October 1995, it did not formally notify Plaintiff because he was currently reassigned to another position. It was subsequently decided that Plaintiff, along with two other managerial employees, would not receive salary increases due to performance deficiencies.

On November 3, 1995, Plaintiff was diagnosed with ADHD. Sometime in mid to late November, Plaintiff inquired of Flechtner regarding his job performance. At this time, however, Plaintiff had not informed Defendant, nor was Defendant independently aware, that Plaintiff had been diagnosed with ADHD, or suffered from a learning disability. During their discussion, Flechtner informed Plaintiff that he "had some concerns," and that Plaintiff was very obstinate and inattentive. It was only at this point that Plaintiff disclosed his condition to Flechtner to "explain some of Flechtner's concerns." On the next day, Plaintiff contacted Judy Piarulli, the Personnel Director, and informed her that he "was claiming protected status under the ADA." Compl. at ¶ 9. Significantly, prior to his conversation with Flechtner, Plaintiff did not believe that his condition negatively affected his job performance, and did not request any accommodation from Defendant at any time during his employment.

The impetus for Plaintiff's claim arose on January 4, 1996, when he did not receive a pay raise. The next day, at Plaintiff's demand, a meeting was held with Flechtner, Jody LaLone, a senior Vice President at Car–Freshner, and Piarulli. At this meeting, Flechtner informed Plaintiff that he was not given a pay raise because his job performance was unsatisfactory, citing specific deficiencies. Flechtner then informed Plaintiff that although his performance as Assistant Administrator was lacking, Defendant had no intention of discharging him, and that he was being considered for a possible new position. Flechtner told Plaintiff that the final determination regarding the new position would not be made, however, until Plaintiff was formally evaluated in his current position on the yet to be completed product development project. Apparently displeased that he would need to wait for a decision, Plaintiff demanded a decision from Flechtner whether he would be placed in this new position. Although Flechtner repeated that this decision depended on Plaintiff's evaluation in his current project, and that the specifics regarding the new position were not finalized, Plaintiff nevertheless demanded that Flechtner give him an immediate answer. After Flechtner informed Plaintiff that compelling him to make a decision at the present time would result in Plaintiff's discharge, Plaintiff did not relent in his demand. Unsurprisingly, Flechtner informed Plaintiff that he left him no other choice than to discharge him.

Subsequent to his employment with Defendant, Plaintiff has worked as a consultant, business manager, operations manager, and Director of Operations at Crescent's Pizza, a restaurant chain, and is also employed as a firefighter for the City of Watertown.

## II. Discussion

### A. The Standard for Summary Judgment

The standard for summary judgment is well-settled. Under Fed.R.Civ.P. 56(c), if

there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 86 (1996). The moving party bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting FED. R. CIV. P. 56(c)). The initial burden is to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

Once the moving party has met its burden, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548; *Matsushita*, 475 U.S. at 585–86, 106 S.Ct. 1348. A dispute regarding a material fact is genuine if a reasonable jury could return a verdict for the non-moving party; that is, whether the non-movant's case, if proved at trial, would be sufficient to survive a motion for judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When reasonable minds, however, could not differ as to the import of the evidence, then summary judgment is proper. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Although the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought, *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989); *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985) *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), the motion will not be defeated by a non-movant who raises merely a "metaphysical doubt" concerning the facts or who only offers conjecture or surmise. *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991) (quoting *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348); *see also Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990). Indeed, the nonmoving party's opposition may not rest on mere allegations or denials of the moving party's pleading, but "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

The Court is aware of the dangers of summary judgment in connection with an ADA claim. "Because direct evidence of ... discriminatory intent will rarely be found, 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) (quoting *Gallo v. Prudential Residential Services, L.P.*, 22 F.3d 1219, 1224 (2d Cir.1994)). "However, even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Id.* (citing *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985), *cert. denied* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985)).

It is with these standards in mind that the Court addresses Defendant's motion.

### III. Plaintiff's ADA Claim

Plaintiff claims employment discrimination in violation of the ADA.

In order to establish a prima facie case of discriminatory discharge under the ADA, Plaintiff must establish that: (1) the employer is subject to the statute under which the claim is brought, (2) Plaintiff is

an individual with a disability within the meaning of the statute in question, (3) Plaintiff could perform the essential functions of the job, with or without reasonable accommodation, and (4) the employer had notice of the plaintiff's disability and failed to provide such accommodation. *See Ryan v. Grae & Rybicki,* 135 F.3d 867, 869–70 (2d Cir.1998); *Lyons v. Legal Aid Society,* 68 F.3d 1512, 1515 (2d Cir.1995); *Bates v. Long Island R. Co.,* 997 F.2d 1028, 1035 (2d Cir.), *cert. denied,* 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993). A plaintiff alleging employment discrimination under the ADA bears the initial burden of establishing a prima facie case. *See Wernick v. Federal Reserve Bank of N.Y.,* 91 F.3d 379, 383 (2d Cir.1996). There is no question here with respect to the first prong, as Defendant regularly employs approximately 375 employees in its air freshner business. *See* 42 U.S.C. § 12111(5).

The gravamen of Defendant's argument is that Plaintiff does not have a disability as defined under the ADA. Defendant further argues that even if Plaintiff was found to be disabled under the statute, he was not a qualified individual with a disability—that is, he could not perform the essential functions of the Assistant Administrator position, with or without reasonable accommodation. Lastly, Defendant contends that Plaintiff failed to notify Defendant that he requested reasonable accommodation, thus failing to trigger the fourth prong of his claim. Thus, the Court's initial task is to analyze whether Plaintiff has a disability as defined under the ADA.

Plaintiff alleges that he has "a disability that is recognized as a 'specific learning disability' under the ADA," Compl. at ¶ 7, and, therefore, is automatically placed within a "protected class" under the ADA. The Court initially notes that Plaintiff's ADHD likely qualifies as an impairment within the meaning of the statute. *See Bercovitch v. Baldwin School,* 133 F.3d 141, 155 (1st Cir.1998) (noting that "while ADHD is not a learning disability per se, it

is listed as a "mental disorder" in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSMIV)"); *Price v. The National Bd. of Med. Examiners,* 966 F.Supp. 419, 422 (S.D.W.Va.1997); *see also Kaltenberger v. Ohio College of Podiatric Medicine,* 162 F.3d 432, 435–36 (6th Cir. 1998).

"Disability" is defined under the ADA to include: (a) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (b) a record of such impairment; or (c) being regarded as having such an impairment. *See* 42 U.S.C. § 12102(2); *Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 641 (2d Cir.1998); *Francis v. City of Meriden,* 129 F.3d 281, 283 (2d Cir.1997). Although Plaintiff's Complaint is silent on which definition of disability underlies his claim, the papers submitted by the parties touch on all three definitions. The Court will initially proceed under the first definition, and determine whether Plaintiff has demonstrated a triable issue of fact regarding whether his ADHD substantially limited the major life activities of concentrating, learning, and working. The Court is cognizant, however, that it need only consider whether Plaintiff is substantially limited in working if it finds that Plaintiff is not substantially limited with respect to any other major life activity. *See* 29 C.F.R. § 1630.2(j) (1998).

### A. Substantially Limits a Major Life Activity

The ADA does not define "major life activities" or "substantial limit[ation]." However, the regulations promulgated by the EEOC under the ADA provide some guidance on these terms. *See City of Meriden,* 129 F.3d at 283 n. 1 (affording "great deference" to EEOC interpretation of the ADA). The regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R.

§ 1630.2(i). As EEOC regulations recognize that this list is not exhaustive, sitting, standing, lifting, reaching, thinking, concentrating, and interacting with others are also considered major life activities. *See Martinez v. Labelmaster, American Labelmark Co.*, 1998 WL 786391, at *7 n. 8 (N.D.Ill. November 6, 1998) (citing EEOC Compliance Manual § 902.3(b)); *Glowacki v. Buffalo Gen. Hosp.*, 2 F.Supp.2d 346, 351 (W.D.N.Y.1998). Here, Plaintiff's claim is premised on his ability to concentrate, learn, and work.

The term "substantially limits" is defined in the ADA regulations as: (i) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner, or duration under a individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. *See* 29 C.F.R. § 1630.2(j)(1); *Colwell*, 158 F.3d at 643. The regulations further counsel that other factors be considered in determining whether an individual is substantially limited in a major life activity: (i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. *See id.* at § 1630.2(j)(2).

The ADA does not consider every impaired person to be disabled as defined under the statute. "Although almost any impairment may, of course, in some way affect a major life activity, the ADA clearly does not consider every impaired person to be disabled. *See Price*, 966 F.Supp. at 422 ("[A] "learning disability" does not always qualify as a disability under the ADA."). Thus, in assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments which merely affect major life activities from those that substantially limit those activities." *Ryan*,

135 F.3d at 870 (citing *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1454 (7th Cir. 1995) ("[N]ot every impairment that affect[s] an individual's major life activities is a substantially limiting impairment")); *Nweke v. The Prudential Ins. Co. of America*, 25 F.Supp.2d 203 227 (S.D.N.Y. 1998). Thus, the ADA's requirement that an impairment must substantially limit a major life activity to constitute a disability emphasizes that "the impairment must be significant, and not merely trivial." *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 151 (2d Cir.1998) (quoting *Sutton v. United Air Lines, Inc.*, 130 F.3d 893, 898 (10th Cir.1997) (citation omitted)); *Knapp v. Northwestern Univ.*, 101 F.3d 473, 481 (7th Cir.1996) ("Not every impairment that affects an individual's major life activities is a substantially limiting impairment."), *cert. denied*, 520 U.S. 1274, 117 S.Ct. 2454, 138 L.Ed.2d 212 (1997). The determination of whether an individual is disabled under the ADA is made on an individualized, case-by-case basis. *See Reeves*, 140 F.3d at 151; *Ryan*, 135 F.3d at 872 ("[T]he determination whether an impairment 'substantially limits' a major life activity is fact specific"). In this regard, the Court's task is to determine "whether the impairment at issue substantially limits the plaintiff's ability to perform one of the major life activities contemplated by the ADA, not whether the particular activity that is substantially limited is important to him." *Reeves*, 140 F.3d at 152 (quoting *Runnebaum v. NationsBank of Maryland, N.A.*, 123 F.3d 156, 170 (4th Cir.1997) (en banc)). Thus, "the ADA does not guard against discrimination based upon *any* physical or mental impairment but only those impairments that are significant." *Reeves*, 140 F.3d at 152; 29 C.F.R. § 1630.2(j).

In light of these well-settled considerations, the Court will review the nature and severity of Plaintiff's ADHD on the major life activities of concentrating, learning, and, if necessary, working.

### 1. Whether Plaintiff is Substantially Limited in His Ability to Concentrate

Plaintiff alleges that he is "significantly restricted" in his ability to concentrate because, "[a]s compared to the average person, [he] can not concentrate in normal duration or under normal conditions." Pl. Mem. of Law at 11. In response, Defendant argues that Plaintiff's allegations are merely conclusory statements that fail to establish a genuine issue of material fact whether Plaintiff is substantially limited in his ability to concentrate.

■ Here, Plaintiff misconceives the distinction between an impairment and a "disability" as defined under the statute. By focusing solely on his impairment, Plaintiff mistakenly leaps to the conclusion that because he has ADHD, his ability to concentrate is substantially limited as compared to the average person. In effect, Plaintiff argues that his condition alone creates a genuine issue of material fact whether he has a disability. Significantly, Plaintiff has failed to offer any proof as to how his ability to concentrate compares with that of the average person.

The EEOC regulations state that the determination of whether an individual is substantially limited in a major life activity necessarily requires comparison to the average person. *See* 29 C.F.R. § 1630.2(j); 29 C.F.R. § 1630.2(j) ("An individual is not substantially limited in a major life activity if the limitation . . . does not amount to a significant restriction when compared with the abilities of the average person."); *see also Colwell*, 158 F.3d at 644 ("Colwell's descriptions of his limitations are marked throughout by hedging and a studied vagueness, so that there is no support for the idea that his impairments would be significantly limiting to the average person in the general population.").

Here, Plaintiff merely alleges, in conclusory fashion, that as compared to the average person, his ADHD "restricts his ability to screen out distractions . . . which make

it more difficult . . . for him to concentrate." Pl. Mem. of Law at 11. Notably absent from Plaintiff's allegations are specific facts or evidence demonstrating that Plaintiff is substantially limited in his ability to concentrate in comparison to the general population. However, neither "conclusory statements, conjecture, [n]or speculation" suffices to defeat summary judgment. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir.1996); *see also Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir.1995) (unsupported assertions and conclusory statements are not considered on motion for summary judgment). Because Plaintiff has offered only conclusory allegations regarding the impact of his condition as compared to the average person, Plaintiff has failed to carry his burden in establishing that his impairment substantially limited his ability to concentrate.

### 2. Whether Plaintiff is Substantially Limited in His Ability to Learn

■ Plaintiff expends considerable effort in arguing that his "[scholastic] achievements later in life came on the heels of substantial academic and personal struggle dating back to grade school." Pl. Mem. of Law at 13. Plaintiff attributes much of his academic success to "self-accommodations" which mitigated many of the effects of his ADHD. *Id.* at 14. However, Plaintiff's allegations regarding the *present* effect his ADHD had on his ability to perform in his position at Car–Freshner, in comparison to the average person, are noticeably absent. Indeed, in a singular and unsupported reference, Plaintiff states that "Defendant[ ] confirm[s], Plaintiff's ability to learn the job and his ability to concentrate on the job were deficient." *Id.* at 15.

Although the Court "would not expect that [Plaintiff's] learning-related limitations to have simply ceased" outside an academic setting, and that Plaintiff's position at Car–Freshner required him to assimilate and process information, it would be mere speculation, in the absence of any

specific evidence, to conclude that his impairment necessarily constituted a substantial impairment. *See Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 508 (7th Cir.1998). As the Seventh Circuit noted in *Davidson:*

> The lack of evidence that [ADHD] presently limits Plaintiff's ability to learn is more troubling. Although we agree with [Plaintiff] that there is enough evidence concerning her difficulties at school to permit the inference that *she has had difficulty learning in the past,* there is little or no evidence in the record establishing that [ADHD] presently inhibits her capacity to learn. There are some references in the record that arguably could be construed as evidence that [Plaintiff] had difficulty getting oriented . . . and that [Plaintiff] asked more questions than the average person would have done. . . . But we do not think that these oblique references [are] enough to establish that [Plaintiff] has ongoing, substantial limitations on her ability to learn outside the academic setting.

133 F.3d at 508 (emphasis added).

Here, again, Plaintiff's conclusory statements are insufficient to create a triable issue of fact whether Plaintiff's ADHD substantially limited his ability to learn. *See Kulak,* 88 F.3d at 71; *Cronin,* 46 F.3d at 203.

### 3. Whether Plaintiff is Substantially Limited in His Ability to Work

EEOC regulations provide specific guidance for determining whether an individual is substantially limited in the major life activity of working. *See* 29 C.F.R. § 1630.2(j)(3); *Colwell,* 158 F.3d at 643. The ability to work is substantially limited if an individual is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). The regulations further state that "the inability to perform in a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.* Additionally, an individual is not substantially limited in his ability to work if he is either "unable to perform a particular specialized job or a narrow range of jobs." *See* 29 C.F.R. § 1630.2(j); *Best v. Shell Oil Co.,* 107 F.3d 544, 548 (7th Cir.1997).[2]

■ Because the ADA does not entitle an individual to the job of his choice, the inability to obtain or retain one particular job does not qualify as a substantial impairment in the major life activity of working. Rather, the impairment becomes a disability only after it substantially impairs a individual's ability to perform a particular class of jobs, or a broad range of jobs in various classes. *See Daley v. Koch,* 892 F.2d 212, 215 (2d Cir.1989). Thus, in analyzing whether Plaintiff is substantially limited in the ability to work, "the kinds of jobs from which the impaired individual is disqualified must be carefully considered." *Colwell,* 158 F.3d at 643 (quoting *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 723 (2d Cir.1994), *cert. denied* 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995)).

■ Plaintiff's allegations that he is substantially limited in his ability to work are based on wholly unsupported and conclusory statements which fall far short of establishing a triable issue of fact. In echoing the language stated in the EEOC regulations, Plaintiff asserts:

> that geographic area, from which the individual is also disqualified because of the impairment (class of jobs); and/or (b) the number and types of jobs not utilizing similar training, knowledge, skills, or abilities, within that geographic area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes). *See* 29 C.F.R. § 1630.2(j)(3)(ii).

---

**2.** Specific factors that the court may consider in determining whether an impairment substantially limits a person's ability to work include: (1) the geographical area to which the plaintiff has reasonable access; (2) the job from which the individual has been disqualified because of an impairment, and (a) the number and types of jobs not utilizing similar training, knowledge, skills, or abilities, within

Plaintiff is significantly restricted in the ability to perform a broad range of jobs in various classes. Because of his disability, Plaintiff is limited in his ability to concentrat[e], to adapt to certain work environments, and to learn a job as compared to the average person with comparable skills and abilities. The same problems that the [P]laintiff encountered at Car–Freshner—difficulties following oral discussions, problems sustaining concentration, and distractibility—would disqualify him from a wide variety of positions in various fields as compared to the average person with comparable training, skills, and abilities. Plaintiff's limitations create a substantial barrier to employment and employability especially in his chosen fields.

Pl. Mem. of Law at 15.

At most, Plaintiff's allegations suggest that as a result of ADHD, Plaintiff was unable to perform the position of Assistant Administrator at Car–Freshner. That position required Plaintiff to work with minimal supervision and did not lend itself to a specific job description or a defined set of tasks. Plaintiff has not offered any evidence from which a reasonable trier of fact might infer that his ADHD precluded him from holding a comparable position at another company. *See Davidson,* 133 F.3d at 506–07. Indeed, Plaintiff's subsequent employment as a business manager and director of operations at Crescent's Pizza indicate that while Plaintiff's impairment prevented him from performing the specialized job of Assistant Administrator at Car–Freshner, he was able to perform in a similar capacity elsewhere. Plaintiff has failed to identify what requirements posed by a class of jobs, or alternatively, by a broad range of other jobs, were problematic in light of his ADHD. Accordingly, Plaintiff's conclusory statements are insufficient to create a triable issue of fact whether Plaintiff's ADHD substantially limited his ability to work. *See Kulak,* 88 F.3d at 71; *Cronin,* 46 F.3d at 203.

## B. The "Record of Impairment" and "Regarded As" Prongs

### 1. Record of Impairment

■ The second part of the definition provides that an individual with a record of an impairment that substantially limits a major life activity is an individual with a disability. *See* 29 C.F.R. § 1630.2(k); *Colwell,* 158 F.3d at 645. This part of the definition is directed at ensuring that people are not discriminated against because of a "history of disability." 29 C.F.R. § 1630.2(k). To make out a claim for discrimination based on a record of impairment, Plaintiff must show that at some point in the past, he was classified or misclassified as having a mental or physical impairment that substantially limits a major life activity. *See Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1120–21 (5th Cir.1998); *Roth,* 57 F.3d at 1457. Plaintiff must also prove that the employer was aware of the record in question. *See* 29 C.F.R. § 1630.2(k); *Davidson,* 133 F.3d at 510 n. 8; *Roth,* 57 F.3d at 1457; *Nathanson v. The Medical College of Pennsylvania,* 926 F.2d 1368, 1382 (3d Cir. 1991).

■ Although plaintiff alleges that he has a record of impairment "that dates back to grade school," Pl. Mem. of Law at 16, there is no evidence that his condition was discussed with Flechtner during his interview, or that Defendant was aware of Plaintiff's learning difficulties. Furthermore, Defendant became aware of Plaintiff's impairment in November 1995, only after Plaintiff chose to disclose his ADHD in response to Flechtner's criticisms of his job performance. Significantly, this occurred some eight months after he was hired. Consequently, Plaintiff has failed to raise a genuine issue regarding whether he has a record of impairment limiting a major life activity.

### 2. Regarded As Having an Impairment

■ The third way to prove a disability within the meaning of the ADA is to prove

that the employee is "regarded as" having an impairment that substantially limits one or more major life activities. *See* 29 C.F.R. § 1630.2(1). In *City of Meriden,* the Second Circuit held that whether an individual is "regarded as" having a disability "turns on the employer's perception of the employee" and is therefore "a question of intent, not whether the employee has a disability." 129 F.3d at 284. "It is not enough, however, that the employer regarded that individual as somehow disabled; rather, the plaintiff must show that the employer regarded the individual as disabled within the meaning of the ADA." *Colwell,* 158 F.3d at 646. Thus, the focus is whether Defendant knew of Plaintiff's condition, and, if so, whether it believed that it substantially affected his ability in a major life activity. *See Daley,* 892 F.2d at 215–16 ("If appellant had been perceived by the Police Department to be suffering from an impairment which substantially limits a major life activity, whether or not in reality he had no impairment, then he might qualify for relief. . . .").

▇▇▇ Plaintiff fails to offer any evidence suggesting that he was regarded by Defendant as having any impairment related to ADHD that was substantially limiting. On the contrary, it is clear that prior to Plaintiff's disclosure that he was diagnosed with ADHD, Defendant never considered him to be suffering from an impairment which substantially limited a major life activity. Indeed, prior to receiving Flechtner's negative evaluation, Plaintiff acknowledges that he did not believe his condition affected his job performance, Dep. of Todd DeMar at 102, and that he concealed his impairment "because of possible embarrassment." Aff. of Todd DeMar at ¶ 51. Even if Defendant perceived Plaintiff's obstinance and inattentiveness to be an impairment, the record is absent of any indication that Defendant perceived these deficiencies as limiting Plaintiff's ability to concentrate, learn, or work. Consequently, Plaintiff has failed to raise a genuine issue whether he was regarded as

having a substantially limiting impairment involving a major life activity.

**C. Qualified Individual With a Disability**

Assuming, arguendo, that Plaintiff had a disability, he fails to establish that he is a "qualified individual with a disability." *See* 42 U.S.C. §§ 12111(8), 12112(a); 29 C.F.R. § 1630.2(m). A qualified individual with a disability is statutorily defined to mean:

> [A]n individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. . . . [C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written job description . . . this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m). Whether plaintiff is a "qualified individual" necessarily entails an analysis of the essential functions of the Assistant Administrator position.

▇▇▇ "The term 'essential functions' . . . is generally defined to mean . . . the 'fundamental' duties to be performed in the position in question, but not functions that are merely 'marginal'." *Stone v. City of Mount Vernon,* 118 F.3d 92, 97 (2d Cir. 1997), *cert. denied,* ──── U.S. ────, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998); 29 C.F.R. § 1630.2(n). While the inquiry into whether a particular function is essential initially focuses on the employer's business judgment, the regulations list several non-exclusive factors also to be considered. These include, inter alia, whether the position exists to perform a particular function; the number of employees available to perform the job function; the degree of expertise or skill required to perform the job function; written job descriptions; and the amount of time spent performing the function. *See* 29 C.F.R. § 1630.2(n); *Lyons,*

68 F.3d at 1515–16. Whether a particular function is essential is a factual determination that must be made on a case-by-case basis. *See id.*

 Although Plaintiff's position did not have a formal job description, he was informed during his interview that the position was unstructured and very demanding. The position was newly created and designed to address Defendant's need for increased management and required an individual that could function independently and handle a variety of duties. Because the position required flexibility and the ability to react to the needs of the business, it did not lend itself to a clear set of responsibilities or specific directions and instructions for the tasks to be performed. Significantly, there was only one Assistant Administrator position.

The Assistant Administrator position exists to fill a particular management need and required a specific skill set to perform the job. Furthermore, Defendant stated that a lack of structure and the need for Plaintiff "to do whatever [he] was told to do at that time," were essential functions of the Assistant Administrator position. Because the position was new and undefined, it was not the type of position that could readily be distributed among Defendant's other employees. Plaintiff's need for a more defined and structured environment with written guidelines and specific tasks to be performed, runs directly counter to the nature of the position and the reason Plaintiff was hired. The accommodations requested by Plaintiff would fundamentally alter the position and eliminate many of the essential functions of the Assistant Administrator position, and are therefore unreasonable. *See Gilbert v. Frank,* 949 F.2d 637, 642 (2d Cir.1991) ("[T]hough "reasonable accommodation" may include such adjustments as modification of physical facilities, work schedules, or equipment, or some job restructuring, "reasonable accommodation" does not mean elimination of any of the job's essential functions."); *Hall v. United States Postal Serv.,* 857 F.2d 1073, 1078 (6th Cir. 1988) ("[A]n accommodation that eliminates an essential function of the job is not reasonable"). Accordingly, Plaintiff has also failed to establish a triable issue of fact whether he is a qualified individual with a disability.

**D. Failure to Request Accommodations**

Defendant's final argument is that because Plaintiff failed to request an accommodation from Defendant, he has failed to establish a claim under the ADA. The regulations specifically provide:

> If an employee with a known disability is having difficulty performing his or her job, an employer may inquire whether the employee is in need of a reasonable accommodation. In general however, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed.... Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability.

29 C.F.R. § 1630.9.

 Thus, "it is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one." *Sidor v. Reno,* 1997 WL 582846, at *6 (S.D.N.Y. September 19, 1997) (quoting *Taylor v. Principal Fin. Group, Inc.,* 93 F.3d 155, 165 (5th Cir.), *cert. denied,* 519 U.S. 1029, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996)). Once such a request for accommodation is made, "the responsibility for fashioning a reasonable accommodation is shared between the employee and the employer." *Id.* However, "[i]f the employee fails to request an accommodation, the

employer cannot be held liable for failing to provide one." *Taylor,* 93 F.3d at 165. Plaintiff cannot hold Defendant liable for reasonable accommodations that he never requested.

## IV. CONCLUSION:

For all of the foregoing reasons, Defendant Car–Freshner's motion for summary judgment is **GRANTED,** dismissing Plaintiff DeMar's Complaint in its entirety.

**IT IS SO ORDERED.**