**Stephen M. TODD, Plaintiff,**

v.

**John S. MCCAHAN, Airborne Freight Corp. d/b/a Airborne Express, Inc., Defendants.**

**No. CIV.A.1:99–CV–1100–J.**

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 31, 2000.

Michael Steven Webb, Webb & Webb, Duluth, GA, for Plaintiff.

Michael C. Towers, David Richard Kresser, Fisher & Phillips, Atlanta, GA, for Defendants.

### ORDER

CAMP, District Judge.

This case is before the Court on Defendants' Motion for Summary Judgment [# 12–1] and Defendants' Motion to File Brief in Excess of Twenty–Five Pages [# 13–1].

## I. BACKGROUND [1]

Plaintiff Stephen M. Todd brings this employment discrimination action against

---

1. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, all evidence is viewed in a light most favorable to the non-movant. However, because Plaintiff did not comply with Local Rule 56 B(1) and respond to each of Defendant's undisputed facts, Defendant's undisputed facts "shall be deemed to have

Defendants John McCahan and Airborne Express, Inc., pursuant to Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101. Plaintiff contends that Defendants subjected him to discrimination, harassment and retaliation due to his alleged disability, Attention Deficit Hyperactivity Disorder ("ADHD").[2] In addition, Plaintiff alleges that Defendants' actions give rise to state law tort claims of Negligent Misrepresentation and Defamation. The Parties have completed discovery and Defendant has moved for summary judgment. Plaintiff opposes Defendant's motion.

On September 11, 1997, Plaintiff was diagnosed with ADHD, a condition characterized by "inattention, impulsivity, rapid and excessive activity, emotional lability, poor anger management, and poor frustration tolerance." (Todd Dep., Ex. 4) In order to help "control" this condition, Plaintiff took prescription medications such as Dexedrine and Ritilan. (Todd Dep. p. 49).

In March of 1998, Plaintiff sought a position as a customer service representative at Airborne Express, Inc. Defendant Airborne provides door-to-door pickup and express delivery of packages and documents throughout the United States and foreign countries. In order to better serve its customers, Defendant Airborne operates a Customer Service Call Center located near Hartsfield International Airport. From this location, customer service representatives track packages and answer customer questions.

On March 2, 1998, Defendant Airborne hired Plaintiff as a Customer Service Representative. In his application for employment, Plaintiff failed to document that he had been diagnosed with ADHD and stated that he had no existing medical conditions. (Todd Dep. p. 138, Ex. 6). Upon his hiring, Plaintiff participated in a two week training course in which he learned that the "essential function" of the job was to answer the telephone and assist customers by tracking packages and scheduling their pickup. (Comp.¶ 13).

Almost two weeks after he was hired, members of the management team at the Atlanta Customer Service Call Center began reporting performance problems with Plaintiff. On March 18, Holli Stephens ("Stephens"), a team leader, noticed that Plaintiff had taken a break in violation of Company policy. Stephens counseled Plaintiff regarding the proper break procedure, and reported the incident to John McCahan ("Defendant McCahan"), the Customer Service Manager. (Stephens Aff. ¶ 6; McCahan Aff. ¶ 4; Todd Dep. II pp. 10–11, Ex. 11).

Ten days later, Carmen Luttery ("Luttery"), Plaintiff's team leader and direct supervisor, engaged Plaintiff in a routine coaching and development session in which she monitored and graded Plaintiff's handling of customer calls. During this session, Plaintiff received a low score of 28 out of 100. (Luttery Aff. ¶ 7; Todd Dep. II, Ex. 12).

Plaintiff's performance problems continued throughout the month of April. On April 1, Luttery received a report that Plaintiff was not available on his phone for approximately six minutes during the peak customer call-in hour of 3:30 to 4:30 p.m., when no customer service representative

---

been admitted" by Plaintiff. Local Rule 56 B(2). To the extent that Plaintiff's Statement of Disputed facts conflicts with Defendant's Statement of Undisputed Facts, the Court will draw all justifiable inferences in favor of Plaintiff.

2. For purposes of this Order, Attention Deficit Hyperactivity Disorder ("ADHD") and Attention Deficit Disorder ("ADD") are used interchangeably.

was permitted to take a break. (Luttery Aff. ¶ 8; McCahan Aff. ¶ 5; Todd Dep. II, Ex. 13). Two weeks later, Plaintiff violated company policy by logging off his phones. Plaintiff was counseled regarding these violations, and the incidents were reported to Defendant McCahan. (Luttery Aff. ¶ 9; McCahan Aff. ¶ 6; Todd Dep. II, Ex. 14).

On April 20, Plaintiff reported a problem to Defendant McCahan outside the proper chain of command. Plaintiff was counseled by Defendant McCahan regarding the proper procedure for reporting problems with callers. (McCahan Aff. ¶ 7; Todd Dep. II, Ex. 15). The following day, Luttery gave Plaintiff his work-related statistics for the previous week, which indicated that his average talk time, his available percentage and his calls per hour were below the team average. (Luttery Aff. ¶ 10; Todd Dep. II, Ex. 15).

On May 6, Luttery and Elaine Morris ("Morris"), a team leader and trainer, notified Plaintiff that he was failing to comply with the Company's on-line mailing system requirements. Luttery and Morris explained how the system worked and reviewed the operating procedures with Plaintiff. (Luttery Aff. ¶ 12; Morris Aff. ¶ 4; McCahan Aff. ¶ 8; Todd Dep. II, Ex. 17). Two days later, Plaintiff was directed to attend a training session with a group of new hires wherein he could review the on-line messaging system and go over scenarios to enable him to use the system properly. During the session, Plaintiff interrupted the class, told the trainer that he was "bored," and abruptly exited the session early. Each of these incidents was reported to Defendant McCahan. (Morris Aff. ¶¶ 5, 6, Ex. A; McCahan Aff. ¶ 9; Todd Dep. II pp. 22–24).

On Saturday, May 9, Plaintiff sent an e-mail to Defendant McCahan, Mae Nunn, the Regional Manager for Airborne's Atlanta location, and Carol Maness, the Assistant Customer Service Manager, stating that he had ADHD. (Todd Dep. pp. 115–116, Ex. 3). Plaintiff also mailed a letter to Defendant McCahan and the Vice–President of Human Resources, Richard Goodwin, further notifying them of his condition. (Todd Dep. pp. 129–131, Ex. 4). Neither the e-mail, nor the letter requested any specific accommodation that would help Plaintiff perform better. (Todd Dep. pp. 132, 133). Upon receipt of these messages, Defendant McCahan informed Plaintiff's direct supervisor, Luttery, that Plaintiff had ADHD. (Luttery Aff. ¶ 13).

Plaintiff's performance problems continued after Defendants received notification of his condition. On May 29, Airborne administered a quiz to all Customer Service Representatives as part of an ongoing training exercise. However, Plaintiff refused to take the quiz. (Morris Aff. ¶ 7; McCahan Aff. ¶ 10; Todd. Dep. II, Ex. 19). A few weeks later, Luttery received a call from a customer who complained that Plaintiff had been rude to her during a phone call and had hung up on her. Luttery counseled Plaintiff, noting in a report to Defendant McCahan that Plaintiff responded to counseling in a disrespectful manner—talking over her and not listening to her. (Luttery Aff. ¶ 14; McCahan Aff. ¶ 11; Todd Dep. pp. 144–147).

In response to Luttery's report, Defendant McCahan issued a warning letter to Plaintiff dated June 11, 1998 entitled "Disconnecting Customers." The letter stated:

It has been brought to my attention by external customers that you are disconnecting calls ... If you are caught disconnecting callers, you will be immediately escorted from the building, which could result in termination.

(McCahan Aff. ¶ 12; Todd Dep., Ex. 7). Todd subsequently signed this document.

Two days after Plaintiff was issued this warning letter, team leader Stephens held

a routine coaching and development session with Plaintiff and three other customer service representatives. During this session, Stephens monitored five of Plaintiff's calls and noted that Plaintiff failed to follow proper procedure in four of them. (Stephens Aff. ¶¶ 7–9; Todd Dep. pp. 153–155, 159–162, 169, Ex. 8). During one of these monitored calls, Plaintiff placed a customer on "mute", while the customer repeatedly asked if anyone was on the line. The customer eventually hung up and spoke to another customer service representative. Overall, Stephens issued Plaintiff a score of 28 out of 100 on this coaching and development session. *Id.*

After monitoring these calls, Stephens attempted to review the results of the session with Plaintiff. Plaintiff became insubordinate and refused to listen to Stephens. Both the results of the session and Plaintiff's reaction to these results were reported to Defendant McCahan. (Stephens Aff. ¶ 10, Ex. A).

On June 15, Defendant McCahan received a call from a Manager at another Airborne office where Plaintiff had performed some over-time duties. The Manager informed McCahan that a position had opened and that he wanted Plaintiff to transfer to fill the position. This "attempted delivery coordinator" position did not involve customer service duties. At the Manager's request, McCahan offered the position to Plaintiff. (McCahan Dep. pp. 40–41; Todd Dep. pp. 174–175).

The next morning, Plaintiff rejected this offer and Defendant McCahan called a meeting to discuss the insubordination and disconnection of caller issues reported by Stephens and Luttery. Defendant McCahan explained that he would no longer tolerate further insubordination by Plaintiff toward his supervisors and team leaders, and that he would not tolerate Plaintiff disconnecting callers. (McCahan Aff. ¶ 16, Ex. A; McCahan Dep. pp. 47–48).

Later that afternoon, senior customer service representative Denise Bradley, whose duties included the monitoring of calls to ensure proper handling, observed that Plaintiff had several unusually short phone calls. Bradley picked up her monitoring phone and noticed that Plaintiff received a phone call, failed to greet the customer as required, and failed to respond to the caller's inquiry as to whether someone was on the line. A few seconds later, the call disconnected. Bradley observed two more calls, and in each instance, Plaintiff failed to greet the customer and the call was disconnected after several seconds. Bradley reported this incident to Defendant McCahan. (Bradley Aff. ¶ 5; Comp. ¶ 43; Todd Dep. p. 232; McCahan Dep. p. 97).

When Defendant McCahan confronted Plaintiff with Bradley's report of caller disconnection, Plaintiff became upset and disruptive. Defendant McCahan told Plaintiff that he had been observed disconnecting callers and that he needed to gather his things and leave the premises.

## II. SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure defines the standard for summary judgment: Courts should grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The district court should 'resolve all reasonable doubts about the facts in favor of the non-movant,' ... and draw 'all justifiable inferences ... in his favor ....' " *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir.1991). The court may not weigh conflicting evidence nor make credi-

bility determinations. *Hairston v. Gaines-ville Sun Publ'g Co.,* 9 F.3d 913, 919 (11th Cir.1993), *rh'g denied,* 16 F.3d 1233 (1994)(en banc).

As a general rule, "[the] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, the moving party's responsibility varies depending upon which party bears the burden of proof at trial on the issue in question.

When the non-moving party bears the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim. Instead, the moving party may simply point out to the district court that there is an absence of evidence to support the non-moving party's case on the issue in question. *Id.* at 1115–16. Of course, the moving party may offer evidence to affirmatively negate a material fact upon which the non-movant has the burden and which is essential to its claim. In either case, the non-moving party may not rely upon allegations or denials in the pleadings, but instead must respond with sufficient evidence to withstand a directed verdict motion at trial. Fed. R.Civ.P. 56(e); *Hammer v. Slater,* 20 F.3d 1137, 1141 (11th Cir.1994) (citing *Fitzpatrick,* 2 F.3d at 1116–17).

## III. THE AMERICANS WITH DISABILITIES ACT

■ In 1990, Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). To accomplish this purpose, the ADA prohibits an employer from discriminating against a qualified individual with a disability based upon his or her known physical or mental impairments. 42 U.S.C. § 12112 (1994). In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show that: (1) he has a disability within the meaning of the Act; (2) he is a qualified individual; and (3) he was discriminated against because of his disability. *See e.g., Harris v. H & W Contracting Co.,* 102 F.3d 516, 519 (11th Cir.1996).

■ The ADA defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities" of an individual, "a record of such an impairment," or being "regarded as having such an impairment." 42 U.S.C. § 12102(2); *Swain v. Hillsborough County School Board,* 146 F.3d 855, 857 (11th Cir. 1998). The ADA defines a "qualified individual with a disability" as one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (1994). Thus, to be a "qualified individual with a disability," Plaintiff must show that (1) he has a disability and (2) that he can perform the essential functions of his job despite his disability or can perform the essential functions of his job with a reasonable accommodation for his disability. *See Lewis v. Zilog, Inc.,* 908 F.Supp. 931, 944 (N.D.Ga.1995)(Hull, J.).

Once a plaintiff satisfies these requirements, he must then show that the defendant discriminated against him because of his disability. The Act prohibits employers from taking adverse employment action against qualified disabled employees as a result of their disabilities. 42 U.S.C. § 12112(a). In addition, the statute cre-

ates an affirmative duty for employers to reasonably accommodate qualified individuals with disabilities. 42 U.S.C. § 12112(b)(5)(A).

■ Plaintiff may satisfy the third element of his prima facie case under the ADA, that he was discriminated against because of his disability, through direct, circumstantial or statistical evidence. *Lewis,* 908 F.Supp. at 951. In analyzing ADA claims of intentional discrimination based upon circumstantial evidence, courts have applied the McDonnell Douglas/Burdine/St. Mary's burden shifting analysis available to litigants in Title VII employment discrimination cases. *Id.; see also* EEOC Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. § 1630, App. ("The 'traditional' defense to a charge of disparate treatment under Title VII as expressed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and their progeny, may be applicable to charges of disparate treatment brought under the ADA.").

■ If Plaintiff establishes a prima facie case, the burden shifts to Defendant to offer legitimate non-discriminatory reasons for the adverse employment action. *Lewis,* 908 F.Supp. at 951. If Defendant does so, the burden of production shifts back to Plaintiff to show that Defendant's legitimate reasons are a mere pretext for discrimination. *Id.; see also* EEOC Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. § 1630, App. ("The defense of a legitimate nondiscriminatory reason is rebutted if the alleged nondiscriminatory reason is shown to be pretextual.").

Defendant now moves for summary judgment on several grounds: that Plaintiff does not establish that he is "disabled" within the meaning of the ADA; that

Plaintiff is not a "qualified individual with a disability" as defined by the Act; that no reasonable accommodation was requested; and, finally, that Plaintiff was terminated because of poor work performance not as a result of disability discrimination or retaliation. Plaintiff contends that sufficient evidence in the record satisfies each element of his prima facie case and creates genuine issues of material fact to be submitted to a jury.

## A. Disability

"Disability" is defined under the ADA to include: (a) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (b) a record of such impairment; or (c) being regarded as having such impairment. See 42 U.S.C. § 12102(2). Because Plaintiff fails to adequately state which definition of "disability" underlies his Complaint, the Court explores each of them.

### 1. Substantially Limits Major Life Activity

EEOC regulations state that "major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). While Plaintiff has not clearly stated which major life activity is affected by ADHD, the Court assumes that Plaintiff's "disability" is based on either his ability to work or his ability to learn.

■ An individual's ability to work is substantially limited when he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630.2(j)(3)(i). Because the ADA "does not entitle an individual to the job of his choice," a Plaintiff can not recover unless

he shows that his impairment substantially interferes with his ability to perform a broad range of jobs. *DeMar v. Car-Freshner Corp.,* 49 F.Supp.2d 84, 92 (N.D.N.Y.1999).

■ Similarly, a Plaintiff is not substantially limited in his ability to learn unless he can link his impairment to particular work-related problems and an inability to learn in the work place. *See Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 508 (7th Cir.1998); *DeMar,* 49 F.Supp.2d at 91–92. Plaintiff must provide evidence of this impairment because "oblique references" are not enough to establish that Plaintiff has "ongoing, substantial limitations on [his] ability to learn outside the academic setting." *Davidson,* 133 F.3d at 508.

■ Here, Plaintiff proffers little evidence to support his claim. Plaintiff has failed to offer expert testimony that ADHD affected his ability to work or learn and has failed to show that his impairment substantially interferes with his ability to perform a broad range of jobs. In fact, Plaintiff testified in his deposition that there is *nothing* about ADHD that has hindered his ability to work for Airborne or any other employer. (Todd Dep. p. 54). Plaintiff has also failed to link his work related problems—policy violations, insubordination, disconnecting callers—to either his ability to work or his ability to learn. Finally, Plaintiff has failed to show how his impairment significantly restricts his abilities as compared to those of an average person. In summary, Plaintiff offers no evidence which creates an issue of fact as to whether his condition amounts to a disability as defined in the ADA.

### 2. Record of Impairment

■ An individual with a "record of an impairment" that substantially limits a major life activity is also considered to be an individual with a disability under the EEOC regulations. *See* 29 C.F.R. § 1630.2(k). This ensures that people are not discriminated against because of a "history of disability." *Id.* In order to base a discrimination claim on this definition, Plaintiff must show that he was classified or misclassified as having a mental or physical impairment that substantially limits one or more major life activities. *Id.* Plaintiff must also prove that the employer was aware of the record in question. *See Davidson,* 133 F.3d at 510 n. 8; *DeMar,* 49 F.Supp.2d at 93.

■ Plaintiff has failed to allege a claim under this definition of disability. First, as discussed above, Plaintiff has not produced evidence that his impairment substantially limits a major life activity. Second, the evidence submitted by Plaintiff does not show that Plaintiff has a "record of impairment." While Plaintiff provides a letter from a physician stating that he has been diagnosed with ADHD, Plaintiff offers no evidence that ADHD substantially affects his ability to learn or work.

Finally, no evidence indicates that Defendants were aware of Plaintiff's impairment prior to May 9, 1998.[3] By the time Defendants learned of Plaintiff's impairment, they had concluded that Plaintiff violated numerous work-related policies and that his performance was below average. The problems identified before Defendants received notice of Defendant's ADHD resulted in his termination, not the notice itself. Plaintiff offers no evidence

---

**3.** *See* McCahan Dep. p. 21; Nunn Aff. ¶ 4; Maness Aff. ¶ 8; Luttery Aff. ¶ 13; Morris Aff. ¶ 8; Stephens Aff. ¶ 12; Bradley Aff. ¶ 6.

that the record of ADHD resulted in action by Defendant.

### 3. Regarded as Having an Impairment

 The third way to prove disability within the meaning of the ADA is to show that the employee is "regarded as" having an impairment that substantially limits one or more major life activities. See 29 C.F.R. § 1630.2(1). In this case, Plaintiff must prove that he is an individual who "(1) has a physical or mental impairment that does not substantially limit major life activities but is treated by her employer as constituting such limitation, or (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment." *Hilburn v. Murata Electronics of North America, Inc.*, 17 F.Supp.2d 1377, 1382 (N.D.Ga.1998)(Evans, J.).

 Specifically, the perceived impairment under the EEOC regulations must be "substantially limiting and significant." *Hilburn*, 17 F.Supp.2d at 1382. Moreover, "[m]ere knowledge that the plaintiff suffered from ADD is not sufficient to show that the defendant perceived him as disabled ...." *Blackston v. Warner–Lambert Co.*, 2000 WL 122109, *4 (N.D.Ala.2000). Instead, the impairment must be "viewed by the employer as generally foreclosing the type of employment involved, not just a narrow range of job tasks." *Id.*

 On this record, a reasonable jury could not conclude that Plaintiff's supervisors viewed him as incapable of, or substantially limited in, performing his job because of the diagnosis with ADHD. *Id.* In fact, the evidence shows that Defendants believed Plaintiff was capable of performing the job, but unwilling to do so in a satisfactory manner. Consequently, Plaintiff has failed to raise a genuine issue of material fact regarding this definition of disability. See *DeMar,* 49 F.Supp.2d at 94.

For the reasons stated above, Plaintiff's impairment does not fall within the EEOC definitions of disability. Therefore, the Court concludes that Plaintiff has failed to provide sufficient evidence and authority to support this element of its prima facie case.

### B. Reasonable Accommodation

EEOC regulations provide that "it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed ...." EEOC Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. § 1630, App. (1999). Applying this regulation, the Eleventh Circuit recently held that, "the burden of identifying an accommodation that would allow a qualified employee to perform his or her job rests with the employee, as does the ultimate burden of showing that such accommodation is reasonable." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir.2000).

 In this case, Plaintiff contends that he requested an accommodation in a letter dated May 11, 1998. In this letter, Plaintiff disclosed that he had ADHD and stated that he was "requesting additional assistance from Airborne Express in order to better cope and deal" with his impairment. (Todd Dep., Ex. 4). However, Plaintiff failed to identify a specific accommodation that would allow him to perform his job with Airborne.

The undisputed evidence shows that Defendants responded to Plaintiff's letter and offered to engage in a good faith dialogue regarding specific accommodations. (Todd Dep., Ex. 5). Moreover, Plaintiff admitted that he never told anyone at Airborne that he needed a specific accommodation to help him do his job. (Todd Dep. p. 32). In fact, Plaintiff claimed that ADHD did

not detrimentally affect his ability to perform his job, and actually helped because he "can tend to hustle a little bit more than other people." (Todd Dep. p. 54). Because Plaintiff never requested a specific accommodation, Plaintiff has failed to establish this element of his prima facie case. *See DeMar,* 49 F.Supp.2d at 96.

## C. Termination

Even if Plaintiff had established a disability protected by the ADA, Plaintiff's claim that he was terminated because of his disability fails. Plaintiff in this case relies upon circumstantial evidence of discrimination only. The burden shifting analysis of *McDonnell Douglas* and its progeny applies when a plaintiff utilizes circumstantial evidence to show that he has suffered adverse employment action as a result of his disability.

 Defendant began to experience problems with Plaintiff long before Plaintiff notified Defendant of his ADHD. Plaintiff refused to comply with the company break policies, received a low performance score in a coaching and development session, disrupted a training session, and failed to comply with the company's on-line messaging system. The same poor performance and insubordination continued after Plaintiff gave notification of his condition and resulted in his termination. Therefore, Defendant has shown legitimate non-discriminatory reasons for Plaintiff's discharge.

Plaintiff contends that he was terminated because he had ADHD and that the incidents involving disconnected callers and customer complaints were fabricated

and/or staged as part of a "ruse designed to mask Defendant's retaliation." (Pla. Resp. Brief p. 4). However, Plaintiff offers no evidence other than his unsubstantiated opinion.[4] Therefore, Plaintiff has not established pretext as an element of his prima facie case and Defendants are entitled to summary judgment.

## IV. RETALIATION CLAIM

 The ADA prohibits retaliation against or interference with a person who has asserted his rights under the ADA. *See* 42 U.S.C. §§ 12203(a) and (b). ADA retaliation claims are viewed similarly to Title VII retaliation claims. *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d at 1278, 1286 (11th Cir.1997). In order to assert a prima facie case, plaintiff must show (1) that he engaged in a protected activity, (2) that he suffered an adverse employment decision, and (3) a causal link between the protected activity and the adverse action. *Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1328 (11th Cir.1998)(citing *Stewart,* 117 F.3d at 1287). If Plaintiff establishes a prima facie case, then defendant has the burden of producing a legitimate nondiscriminatory reason for the adverse employment decision. *Stewart,* 117 F.3d at 1287. If defendant makes such a showing, plaintiff must then prove that the proffered reason is mere pretext and that the decision was made as retaliation for the protected activity. *Id.*

Defendants contend that Plaintiff cannot identify any statutorily protected activity in which he was engaged. The ADA's prohibition against retaliation states:

No person shall discriminate against any individual because such individual has

---

4. Plaintiff argues that the decision of an unemployment compensation officer creates a factual dispute as to the reason for his termination. The issues and standards of proof relevant in unemployment proceedings are not the same as those presently before the Court. *See Bradshaw v. Golden Road Motor Inn,* 885 F.Supp. 1370, 1373–75 (D.Nev. 1995)("the question at the hearing is whether the employee is entitled to compensation under state statutes, not whether the employee was discriminated against in violation of federal law."). .

opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this chapter.

42 U.S.C. § 12203(a).

 As pointed out in this order, Plaintiff did not oppose any "act or practice" violative of the ADA. Furthermore, he did not make a charge, testify, assist, or participate in an investigation, proceeding or hearing prior to his discharge. These are the "protected activities" against which employers may not retaliate.

Even had Plaintiff engaged in a statutorily protected activity, Defendant provided a legitimate reason for termination. As stated in Part II, Subsection C of this Order, Defendant has produced legitimate, non-discriminatory reasons for discharging Plaintiff, and Plaintiff has presented no evidence that they were pretext.

## V. STATE LAW CLAIMS

Plaintiff's Complaint asserts state law Defamation and Negligent Misrepresentation claims. However, because summary judgment is appropriate on Plaintiff's federal discrimination and retaliation claims, these state law claims are **DISMISSED WITHOUT PREJUDICE** for want of jurisdiction.

## VI. CONCLUSION

Based upon the foregoing, Defendants' Motion for Summary Judgment [# 12–1] and Defendants' Motion to File Brief in Excess of Twenty–Five Pages are **GRANTED** and Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE**. The Clerk is **DIRECTED** to enter judgment accordingly.